[No. 8020–2–I.   Division One.   January 26, 1981.]

*In the Matter of* M. ROSS STOCKWELL.

M. ROSS STOCKWELL, *Appellant,* v. WASHINGTON STATE CHIROPRACTIC DISCIPLINARY BOARD, *Respondent.*

*Gary Jardine* and *Steven Clem,* for appellant.

*Slade Gorton, Attorney General,* and *John G. Hennen, Assistant,* for respondent.

CALLOW, J.—M. Ross Stockwell appeals from a declaration of unprofessional conduct by the Washington State Chiropractic Disciplinary Board. The board cross–appeals the Superior Court's reversal of Stockwell's license revocation and reduction of penalty to a 6–month license suspension. No objection has been raised by either party to findings of fact made by the disciplinary board and adopted by the Superior Court on appeal. Therefore, they are the facts of the case. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 93 Wn.2d 210, 608 P.2d 254 (1980).

Stockwell is a doctor of chiropractic licensed and practicing since 1973 in Wenatchee, Washington. On July 24, 1976, the 7–member Washington State Chiropractic Disciplinary Board notified Stockwell that allegations of unprofessional conduct had been made against him by 12 Wenatchee–area chiropractors. One of the complainants was Dr. Coy Summers, a Wenatchee chiropractor who is also a member of the disciplinary board.

Stockwell denied the allegations and requested a hearing, which was held on May 4, 1977, before a 3–member committee. Dr. Summers did not serve on the committee, though he did testify at the hearing. The committee recommended to the board that it adopt certain findings and conclusions of unprofessional conduct, but it did not recommend what penalty, if any, to impose.

The full disciplinary board met on August 31, 1977, with one member, who sat on the hearing committee, absent. On September 21, 1977, the board entered findings and conclusions of unprofessional conduct and revoked Stockwell's license to practice. Dr. Summers was present, but abstained from participation in this action.

Stockwell appealed the order to Thurston County Superior Court. While that appeal was pending, the Washington Supreme Court held that the statute providing for the board's membership was unconstitutional. *United Chiropractors of Wash., Inc. v. State,* 90 Wn.2d 1, 578 P.2d 38 (1978). The court found a lack of procedural safeguards to control arbitrary administrative action and abuse of discretion in the licensing and disciplining of chiropractors because the board's membership was composed of persons representing only two of the state's several chiropractic associations. The Superior Court in this action concurred in the board's findings of unprofessional conduct, but found the license revocation to be arbitrary and capricious. The trial court remanded the matter to the board to impose a penalty of no more than a 6–month license suspension.

The disciplinary board and Superior Court both found Stockwell guilty of unprofessional conduct by engaging in

the following acts or practices: (1) selling or dispensing vitamins in violation of WAC 113-12-080; (2) practicing a form of acupuncture known as "meridian therapy" in violation of WAC 113-12-115; (3) practicing an "endonasal technique" which is beyond the scope of chiropractic as defined in RCW 18.25.005; and (4) billing the State for services not actually performed.

Stockwell first contends that the Chiropractic Disciplinary Board did not have authority to revoke his license in light of the decision that the composition of the board was unconstitutional. We disagree. As de facto officers, the board's actions were valid and enforceable. *See, e.g., Green Mountain School Dist. 103 v. Durkee,* 56 Wn.2d 154, 351 P.2d 525 (1960); *State v. Britton,* 27 Wn.2d 336, 178 P.2d 341 (1947); *State v. London,* 194 Wash. 458, 78 P.2d 548, 115 A.L.R. 1255 (1938). In *State v. Franks,* 7 Wn. App. 594, 596, 501 P.2d 622 (1972), the court discussed the elements of the doctrine:

> To constitute a person an officer de facto, he must be in actual possession of the office, exercising its functions and discharging its duties under color of title. . . . As an officer de facto, he must be submitted to as such until displaced by a regular direct proceeding for that purpose.

The doctrine is intended to protect the public and third parties involved in the official acts of persons exercising the duty of an officer while not actually being one in law. Until a statute has been declared unconstitutional, an officer acting under the statute possesses such color of title as to render him an officer de facto. *See Snohomish County Builders Ass'n v. Snohomish Health Dist.,* 8 Wn. App. 589, 508 P.2d 617 (1973); 63 Am. Jur. 2d § 493 (1972). It follows that until the Supreme Court invalidated the statute providing for the board's members, all members were possessed of color of title, and their actions are valid and enforceable.

Stockwell also contends that the presence of Dr. Coy Summers at the board's meeting violated the appearance of fairness doctrine. He contends that, due to the claimed bias

of Dr. Summers, his ongoing relationship with other board members and his presence during the board's deliberations and discussions, a disinterested person would conclude that partiality existed against Stockwell.

We hold that Dr. Summers did not violate the appearance of fairness doctrine. He was not a member of the hearing committee, was not present at the hearing except to testify, and did not participate in committee deliberations. Dr. Summers abstained from voting when the disciplinary board considered the matter, and did not recommend a penalty.

The appearance of fairness doctrine requires that public officials execute their duties with the appearance, as well as the reality, of fairness; they must be as objective and free as possible of entangling influences. *King County Water Dist. 54 v. King County Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976). The doctrine requires proof that some interest may have influenced a board member substantially. *Fleck v. King County*, 16 Wn. App. 668, 558 P.2d 254 (1977).

Stockwell fails to demonstrate why a disinterested person would be justified in thinking that partiality existed. The record shows only that Summers was one of 12 signatories to the letter calling Stockwell's conduct to the attention of the disciplinary board. No other evidence of bias or partiality appears. Aside from resigning from the board, there was nothing else that Summers could have done to maintain the integrity of the board's investigation. We find no suggestion of any improper motive or conduct on Dr. Summers' part, or that his conduct has "infected the independent decision–making process of others on the tribunal . . ." *Fleck v. King County, supra* at 671. The appearance of fairness doctrine is intended to assure the public that parties to a government action receive fair and impartial treatment. No showing has been made to indicate that Stockwell received anything less than fair consideration of his case.

Stockwell's third contention is that WAC 113–12–080, which prohibits chiropractors from selling or dispensing vitamins and food supplements, is inconsistent with RCW 18.25.005, which permits chiropractors to render dietary advice. He contends that the legislature did not intend the advocacy of vitamins to be cause for a license revocation.

In *State v. Wilson*, 11 Wn. App. 916, 528 P.2d 279 (1974), chiropractors were prohibited from giving or prescribing vitamins, minerals, and food supplements for the purpose of treating disease. The court held:

> Although the substances brought into issue by the defendant are available without prescription in retail stores, these items may nevertheless be dangerous when improperly used. Furthermore, the prescription of these substances *for the treatment of disease* has a great potential for abuse if left to the discretion of those practitioners whose training and licensing requirements are limited as in this case. The legislature therefore was within its constitutional authority in limiting the practice of chiropractic and drugless healing in this respect.

*State v. Wilson, supra* at 921. The legislature amended the statute later in 1974, providing that "nothing herein shall be construed to prohibit the rendering of dietary advice." RCW 18.25.005. That statute continues to prohibit the prescription or dispensing of medicine and drugs.

WAC 113–12–080, which prohibits chiropractors from selling or dispensing vitamins or food supplements, can be read consistently with *State v. Wilson*, which prohibits the dispensing of such substances for the treatment of disease, and with RCW 18.25.005, which limits chiropractors to the rendering of dietary advice. The legislature could have overruled *Wilson* and permitted chiropractors to dispense vitamins had it intended to do so. The "dietary advice" provision is an exception to the statute, will be strictly construed, and extends only so far as the language warrants. *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977); *State v. Walker*, 14 Wn. App. 348, 541 P.2d 1237 (1975). We find a significant difference between the pre-

scribing of vitamins for the treatment of disease and giving dietary advice.

Additionally, we accord substantial weight to the board's construction of the statute, since the board is charged with administering a special field of law and is endowed with quasi–judicial powers because of its expertise in that field. *Short v. Clallam County,* 22 Wn. App. 825, 593 P.2d 821 (1979). WAC 113–12–080 reflects the board's determination that chiropractors should not dispense vitamins. Since it does not prohibit them from giving dietary advice, the rule does not exceed the scope of the board's rule–making authority.

Stockwell challenges the board's finding that the use of "meridian therapy" violates the rule prohibiting chiropractors from practicing acupuncture, contending that "acupuncture" requires the piercing of the skin and is prohibited as a surgical act. Meridian therapy, by contrast, involves the use of pressure on the body to relieve pain. While the points used are similar to those used in acupuncture, no piercing of the skin occurs.

No Washington statute or rule defines acupuncture. RCW 18.25.005 prohibits chiropractors from practicing surgery, while WAC 113–12–115 prohibits chiropractors from using needles in the treatment of patients or from holding themselves out as practicing acupuncture in any form. *State v. Wilson, supra,* defined surgery as the severance or penetration of human tissue. The opinion prohibited chiropractors from practicing "galvanic acupuncture" because it involved the penetration of human tissue.

Acupuncture has been limited in other states solely to practices which involve puncturing the skin with needles. *See, e.g., State v. Won,* 19 Ore. App. 580, 582, 528 P.2d 594, 595, 72 A.L.R.3d 1253 (1974) (defining acupuncture as "the selective stimulation of the body's neurological and defense mechanisms by the insertion of needles in an effort to correct neuromuscular and organic disorders or to induce analgesia.'"); *State v. Rich,* 44 Ohio St. 2d 195, 197, 339

N.E.2d 630, 632 (1975) (defining acupuncture as "the insertion of needles beneath the skin to alleviate pain, infirmity, or disease"). In *Commonwealth v. Schatzberg*, 29 Pa. Commw. Ct. 426, 428 n.1, 371 A.2d 544, 545 (1977), the court upheld a regulation prohibiting chiropractors from practicing acupuncture, but noted:

> The word acupuncture as used in this opinion means what the root word of its first element demands—acus is Latin for needle. Somehow the parties to this proceeding fell to misusing the word acupuncture to describe a treatment consisting of applying external pressure or electrical impulse at certain locations of patients' bodies. This last described treatment is not forbidden by the regulation here in question . . .

The "meridian therapy" practiced by Stockwell included neither the use of needles nor the puncturing of skin. It did, however, employ the same meridian points used in acupuncture theory, and the use of pressure on those points for the purpose of relieving pain.

Central to the definition of surgery is the penetration of the skin. Meridian therapy does not penetrate the skin, and though it might utilize acupuncture theories it does not fall under the statutory proscription of surgery. The disciplinary board erred in its conclusion that Stockwell violated WAC 113–12–115.

■ The disciplinary board challenges the trial court's conclusion that it acted arbitrarily and capriciously in revoking Stockwell's license to practice. The board argues that the Superior Court substituted its judgment for that of the board on a matter within the board's expertise. Administrative action is arbitrary and capricious if it makes a determination contrary to law, if there is room for only one opinion, or if the agency's action is wholly unsupportable. Where there is room for two opinions, action taken by an agency after due consideration is not arbitrary and capricious even though the reviewing court may disagree. *Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 529 P.2d 1058 (1975).

The unchallenged findings of fact demonstrate a consistent and continuing pattern of illegal and unprofessional conduct which the board found beyond the scope of chiropractic. Most consistent was the prescription and sale of massive doses of vitamins, the use of the endonasal technique, and the use of urinalysis to detect cancer (often in patients later found to be cancer free). Stockwell argues that these practices do not bear on his professional competency or trustworthiness. The acts, however, do relate directly to his ability to practice competently and lawfully. The board's findings were supported by the record.

There is substantial evidence to justify either the revocation or suspension of Stockwell's license even in the absence of the conclusion that Stockwell practices acupuncture. The judgment is reversed and the decision of the Washington State Chiropractic Disciplinary Board is reinstated.

JAMES, C.J., and DURHAM, J., concur.