[No. 8206-7-III. Division Three. March 22, 1988.]

DIANA A. JARAMILLO, ET AL, *Respondents,* v. JACK L. MORRIS, ET AL, *Defendants,* SUNNYSIDE GENERAL HOSPITAL, *Appellant.*

*Dennis Fluegge* and *Meyer & Fluegge,* for appellant.

*Warren DeWar* and *Burns, Schneiderman & Finkle,* for respondents.

*Kenneth O. Eikenberry, Attorney General,* and *Joyce Dolliver, Assistant,* amici curiae.

THOMPSON, A.C.J.—Sunnyside General Hospital appeals a judgment in a medical malpractice action brought by Diana Jaramillo, et al. We reverse in part, and modify the judgment.

On June 21, 1982, Diana Jaramillo injured her ankle in a fall from a ladder. Her family physician referred her to a Sunnyside podiatrist, Dr. Jack Morris. Later that day, Dr. Morris performed surgery on her at Sunnyside General Hospital to repair a fracture. Since 1972, medical staff privileges at the hospital allowed Dr. Morris to perform all procedures involving the foot and ankle which were covered by his podiatry license. He had performed 13 previous ankle surgeries at the Sunnyside Hospital before the one in question. Mrs. Jaramillo sued Dr. Morris when complications developed. It is undisputed Mrs. Jaramillo suffered damages due to Dr. Morris' negligence, and his surgical procedures fell below acceptable medical standards.

Sunnyside Hospital was joined as a defendant, based on the allegations it was negligent in failing to supervise Dr. Morris during surgery and allowing him to perform ankle surgery in violation of Washington podiatry licensing statutes. The Jaramillos contend licensing statutes do not authorize podiatrists to perform surgery on the ends of the tibia and fibula, as was done here. A Consumer Protection Act (CPA) claim was later added. Before trial Dr. Morris settled with the Jaramillos for $95,000.

The hospital asked the trial court to submit the question of whether Dr. Morris exceeded the authorized scope of his podiatry license to the Washington State Podiatry Board (WSPB), contending the WSPB was the legislatively authorized agency empowered to make that initial determination. On August 30, 1985, the court orally denied the hospital's request, issuing a written order September 27, 1985.

Notwithstanding the trial court's ruling, the hospital petitioned the WSPB on September 4, 1985, for a declaratory ruling on the scope of practice issue. The Jaramillos filed a notice of appearance, and submitted a response to the petition. However, the Jaramillos also moved for summary judgment in Yakima County Superior Court on the same question October 25, 1985.

The trial court heard arguments on the summary judgment motion November 15, 1985, and on November 19 ruled the surgery performed by Dr. Morris on Mrs. Jaramillo was not within the scope of his podiatry license. The court held the statute defining the practice of podiatry, RCW 18.22.010(1), was plain and unambiguous, and did not include surgery on the ends of the tibia and fibula. The court determined it need not defer to the WSPB because the issue involved application of a statute in which the Legislature had clearly defined the scope and limitation of a license to practice podiatry.

Accordingly, the trial judge granted the Jaramillos partial summary judgment, concluding Dr. Morris was not authorized to perform the surgery on Mrs. Jaramillo, that his action in doing so was negligent per se, and therefore the hospital was negligent per se when it allowed Dr. Morris to perform the surgery.

While the trial court was hearing arguments on the motion for summary judgment, the WSPB was holding hearings on the same issue. On December 31, 1985, the WSPB issued findings of fact, conclusions of law, and a declaratory ruling. Contrary to the trial court's ruling, the WSPB found the surgery *was* within the scope of Dr. Morris' podiatry license, as established in RCW 18.22.010(1). It appears from the record the *type* of surgery performed by Dr. Morris (as distinguished from how it was performed) is currently common to a podiatrist's practice in Washington and nationwide. Advised of the WSPB ruling, the trial court refused to reconsider its order on summary judgment. The hospital petitioned this court unsuccessfully for discretionary review of the trial court's decision.

Prior to submitting the case to the jury, the trial court indicated if the jury found the hospital liable for any of Mrs. Jaramillo's economic loss, the court was inclined to apply the CPA to the hospital as a matter of law. However, the court refused to submit the CPA claim to the jury. The court instructed the jury, on the verdict form, that the hospital was negligent as a matter of law for permitting Dr. Morris to perform unlicensed surgery on Mrs. Jaramillo. The verdict form also allowed the jury to find the hospital negligent for permitting the surgery when Dr. Morris was improperly trained, in failing to supervise the surgery, and by allowing the surgery to be performed in violation of state and hospital regulations.

After the jury found for the Jaramillos, and awarded $53,500, including $18,500 for economic loss, the court granted the Jaramillos' request for attorney fees and costs under the CPA in the amount of $55,467.46. Offsetting the damage award by the $95,000 settlement with Dr. Morris, the Jaramillos were left with no recovery against the hospital. The court refused to reduce the attorney fees and costs award. The hospital appeals. The Jaramillos request attorney fees on appeal under the CPA.

The first issue is whether, assuming the ankle surgery performed by Dr. Morris was outside the scope of his podiatry license, the trial court erred in ruling the hospital violated the CPA as a matter of law by permitting Dr. Morris to perform the surgery on Mrs. Jaramillo. The hospital contends the CPA is not applicable because the act's purpose is to protect trade or commerce, not compensate for acts of negligence.

■ An individual may sue under the CPA, RCW 19.86-.090, if: (1) the conduct in question is unfair or consists of deceptive acts; (2) in the sphere of trade or commerce; (3) the conduct impacts the public interest; and (4) causes the plaintiff injury to business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-91, 719 P.2d 531 (1986). With regard to the "learned professions", such as law or medicine, the question

is whether the claim involves entrepreneurial aspects of the practice; mere claims of professional negligence or malpractice are exempt. *Haberman v. WPPSS,* 109 Wn.2d 107, 169, 744 P.2d 1032 (1987); *Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984); *Quimby v. Fine,* 45 Wn. App. 175, 180, 724 P.2d 403 (1986), *review denied,* 107 Wn.2d 1032 (1987). In *Quimby,* a plaintiff's professional negligence claim against a doctor was held outside the scope of the CPA. The court held claims which relate to the competence and performance of the profession do not fall within the sphere of trade or commerce and are thus exempt from the CPA.

Here, the Jaramillos' claims against the hospital concern its alleged negligence in not determining Dr. Morris' qualifications to perform ankle surgery and, if the ankle surgery is not within his podiatry license, negligence in not determining that fact. Also, there was a claim the hospital negligently supervised the operation by failing to provide a staff surgeon to oversee Dr. Morris' surgery. The entrepreneurial aspects of the hospital's business, such as billing, were not implicated.[1] The standard of care applied to doctors, podiatrists, and hospitals is contained in RCW 4.24.290, *i.e.,* "that degree of skill, care, and learning possessed at that time by other persons in the same profession . . ." We see no reason to distinguish here between claims against doctors or hospitals for failure to meet that standard. Thus, we hold the Jaramillos' negligence claims against Sunnyside Hospital are not properly cognizable under the CPA. The trial court erred in holding otherwise. The award of attorney fees and costs under the act is reversed.

---

[1]The Jaramillos cite *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 675 P.2d 193 (1983), which held the unauthorized practice of law by employees of Transamerica constituted unfair and deceptive practices under the CPA. They argue the hospital's actions in allowing 14 unsupervised and unlicensed surgeries is thus deceptive, analogizing to the agent's actions in *Bowers.* However, Dr. Morris was not the hospital's agent and was therefore not conducting its business. For this reason, *Bowers* does not control the result here.

■ The next issue is whether the trial court erred in not referring the question of the scope of Dr. Morris' license to practice podiatry to the WSPB pursuant to the doctrine of primary jurisdiction. Primary jurisdiction is a doctrine used by a court in deciding whether it should refrain from exercising jurisdiction over a case or controversy until an administrative agency with special competence and expertise in an area, and with legislative authority to resolve a particular issue, has had an opportunity to do so. *In re Real Estate Brokerage Antitrust Litig.*, 95 Wn.2d 297, 301, 622 P.2d 1185 (1980); *Kringel v. Department of Social & Health Servs.*, 47 Wn. App. 51, 53, 733 P.2d 592 (1987); *Moore v. Pacific Northwest Bell*, 34 Wn. App. 448, 662 P.2d 398 (1983); 4 K. Davis, *Administrative Law* § 22:1 (2d ed. 1983). It does not displace the jurisdiction of a court, but merely allocates power between courts and agencies to make *initial* determinations; the court normally retains power to make the *final* decision. *In re Real Estate Brokerage Antitrust Litig.*, supra at 301–02 (quoting 3 K. Davis, *Administrative Law* § 19:01 (1958)). Three general requirements must be met before a court should defer to an agency under the doctrine:

1. The administrative agency has the authority to resolve the issues that would be referred to it by the court. . . .

2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues . . .

3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme.

(Citations omitted.) *In re Real Estate Brokerage Antitrust Litig.*, supra at 302–03. Refusing to defer to the WSPB, the trial court stated:

The issue presented by plaintiff's motion for partial summary judgment involves the application of the statute enacted by the legislature in which it appears that the legislature has plainly resolved all argument about

the scope and limitations of a license to practice podiatry.

. . .

RCW 18.22.010 is plain and unambiguous and needs no interpretation. There the legislature has limited the practice of podiatry to the human foot. In this case, the surgery complained of was performed on the ends of the leg bones. No part of the foot was involved. It is plain to see from the exhibits and from the affidavits of medical experts that where the leg bones end the foot begins and vice versa. Although they are indeed connected by ligaments and tendons, tissue and skin, the one does not appear to be part of the other. If the legislature wishes to expand the scope of the podiatrist's license, it may do so in due course. The Court, however, cannot undertake this legislative decision.

The decision of a court to defer exercising its jurisdiction is discretionary. *In re Real Estate Brokerage Antitrust Litig., supra* at 305. In deciding whether the trial court abused its discretion, we apply the three general requirements set out in *In re Real Estate Brokerage Antitrust Litig., supra.*

## 1. Authority

Administrative agencies are creatures of the Legislature without inherent or common law powers and may exercise only those powers conferred either expressly or by necessary implication. *State v. Munson*, 23 Wn. App. 522, 524, 597 P.2d 440 (1979); *see also Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 125, 641 P.2d 163 (1982). Mrs. Jaramillo argues the WSPB did not have the power to define the term "podiatry" to include something not included in the Legislature's definition, and thus the trial court was correct in refusing to defer the issue to the WSPB.

RCW 18.22.005 declares the Legislature's intent that the WSPB be established "to regulate the practice of podiatry for the protection and promotion of the public health, safety, and welfare and to act as a disciplinary body for the licensed podiatrists of this state". The WSPB's duties were:

(1) Administer all laws placed under its jurisdiction;

(2) Prepare, grade, and administer or determine the nature, grading, and administration of examinations for applicants for podiatrist licenses;

(3) Examine and investigate all applicants for podiatrist licenses and certify to the director all applicants it judges to be properly qualified;

. . .

The board may adopt any other rules which it considers necessary or proper to carry out the purposes of this chapter.

Former RCW 18.22.015. One of the laws the WSPB is necessarily empowered to administer is RCW 18.22.010(1), defining the practice of podiatry. That section, at issue in this case, reads:

(1) The practice of podiatry means the diagnosis and the medical, surgical, mechanical, manipulative, and electrical treatments of *ailments of the human foot.* A podiatrist is a podiatric physician and surgeon of the foot licensed to treat ailments of the foot, except:

(a) Amputation of the foot;

(b) The administration of a spinal anesthetic or any anesthetic, which renders the patient unconscious, or the administration and prescription of drugs including narcotics, other than required to perform the services authorized for the treatment of the feet; and

(c) Treatment of systemic conditions.

(Italics ours.) Additionally, the WSPB could:

(4) Conduct hearings for the refusal, suspension, or revocation of licenses . . .

(5) Investigate all reports, complaints, and charges of malpractice, unsafe conditions or practices, or unprofessional conduct against any licensed podiatrist and direct corrective action if necessary;

Former RCW 18.22.015.[2] Because the WSPB has authority to administer the laws, and under the administrative procedure act can issue declaratory rulings, RCW 34.04.080, it

---

[2]Effective June 11, 1986, the Legislature amended certain provisions of RCW 18.22, and enacted the Uniform Disciplinary Act, RCW 18.130, *see* RCW 18.22-.018, which now governs the issuance and denial of licenses, and discipline of licensees, under RCW 18.22.

had power to resolve the scope of license issue that arose in this case.

### 2. Special Competence

The evidence presented and considered by the WSPB in reaching its decision clearly indicates the issue is more complex than perceived by the trial court. The "foot", according to the expert testimony, affidavits, and medical texts in the record, includes the extrinsic and intrinsic muscles, tendons, ligaments, and other soft tissue structures directly attached to the anatomical foot, as well as osseous structures up to and including the ankle joint. After its ruling on the contested case concerning Dr. Morris and Sunnyside Hospital, the WSPB issued WAC 308–31–025, which provides, in pertinent part:

(1) An "ailment of the human foot" as set forth in RCW 18.22.010 is defined as any condition, symptom, disease, complaint, or disability involving the functional foot. The functional foot includes the anatomical foot and any muscle, tendon, ligament, or other soft tissue structure directly attached to the anatomical foot and which impacts upon or affects the foot or foot function *and osseous structure up to and including the articulating surfaces of the ankle joint.*

(2) In diagnosing or treating the ailments of the functional foot, a podiatrist is entitled to utilize medical, *surgical,* mechanical, manipulative, radiological, and electrical treatment methods and the diagnostic procedure or treatment method *may be utilized upon an anatomical location other than the functional foot.*

(Italics ours.) Thus, while "foot" in common parlance may not refer to the ankle joint, medically it is considered a functional component. To treat- "ailments of the foot", a podiatrist must at times necessarily perform surgery on the ankle joint, which would of necessity include the ends of the tibia and fibula.

This is not a case such as *Everett v. State,* 99 Wn.2d 264, 661 P.2d 588 (1983), wherein the practitioners of a medical specialty are attempting to expand their license authority beyond statutory bounds. This is a specialized area and the

board members, with the possible exception of the lay member, have more expertise than the court. While not patently ambiguous, the term "foot", as revealed by the testimony at the WSPB hearing, is ambiguous. A general rule of statutory construction requires considerable judicial deference be given an administrative agency's construction of an ambiguous statute when that agency is charged with its administration and enforcement. The courts invoke the doctrine of primary jurisdiction for the same reason: special expertise. *In re Stockwell*, 28 Wn. App. 295, 622 P.2d 910 (1981) concerned the Washington State Chiropractic Disciplinary Board's construction of what is included in a chiropractor's license. In that case the court stated:

> [W]e accord substantial weight to the board's construction of the statute, since the board is charged with administering a special field of law and is endowed with quasi–judicial powers because of its expertise in that field.

*Stockwell*, at 301. That statement is equally applicable to this case.

### 3. Pervasive Regulatory Scheme

Here, the Legislature enacted a set of statutes designed to "establish an effective public agency to regulate the practice of podiatry . . ." RCW 18.22.005. When a court does not refer issues to an agency that fall within this pervasive regulatory scheme, a danger exists that the court's action might conflict with that scheme. *In re Real Estate Brokerage Antitrust Litig., supra* at 303. Here, that clearly occurred, given the conflict between the trial court's ruling and that of the WSPB after its contested ruling. The resulting administrative rule promulgated in WAC 308–31–025 further illustrates this point.

We hold the court abused its discretion in not referring to the WSPB the critical issue in this case of whether Dr. Morris' podiatry license included authority to perform the particular surgery involved in Mrs. Jaramillo's complaint.

Because we have determined it was error for the trial court not to defer to the WSPB's expertise, the court's determination the hospital was negligent per se, being based on the unlicensed finding, was also error. The unlicensed finding was also the basis for the court's determination the CPA applied. This is an additional reason for setting aside the CPA judgment.

Neither party has appealed the damage award. Thus, were we to order a new trial, as our ruling would ordinarily dictate, it would be limited to the issue of liability. *Mina v. Boise Cascade Corp.,* 104 Wn.2d 696, 707–08, 710 P.2d 184 (1985); *Clements v. Blue Cross of Wash. & Alaska, Inc.,* 37 Wn. App. 544, 553–54, 682 P.2d 942, *review denied,* 102 Wn.2d 1016 (1984). To do so would be a useless act and a waste of judicial resources because, as noted, the jury found damages of only $53,500, which were totally offset by the prior settlement with Dr. Morris. We have the authority to reverse or modify the decision being reviewed and "take any other action as the merits of the case and the interest of justice may require". RAP 12.2.

Accordingly, we reverse the trial court's judgment under the CPA awarding attorney fees and costs, and deny the Jaramillos' request for attorney fees on appeal. We also hold the trial court committed error in failing to defer to the WSPB, and in determining the hospital negligent per se for allowing Dr. Morris to perform ankle surgery, but determine the error harmless, not requiring retrial.

GREEN and MUNSON, JJ., concur.

Review denied by Supreme Court July 5, 1988.