950 P.2d 38 (1998)
STATE of Washington, Respondent,
v.
David C. STEPHENSON, Appellant.
No. 20059-7-II.
Court of Appeals of Washington, Division 2.
January 30, 1998.
As Amended April 10, 1998.
*39 Suzanne Lee Elliott, (Court Appointed), Seattle, for Appellant.
Pamela Beth Loginsky, Kitsap Co. Deputy Pros. Atty., Port Orchard, for Respondent.
SEINFELD, Judge.
David Stephenson challenges the criminal intimidating a public servant statute, contending that it is unconstitutionally overbroad. We conclude that the statute's limitations on protected speech are narrowly tailored to serve a compelling public purpose and are reasonable. Thus, the statute does not violate the First Amendment. Consequently, we affirm Stephenson's convictions.

FACTS
In January 1995, Stephenson was convicted of two counts of second degree theft. *40 Kitsap County Superior Court Judges Leonard Costello and Leonard Kruse had issued arrest warrants, and Judge Kruse had presided over the arraignment and omnibus hearings preceding trial.
In March 1995, Stephenson sent Judges Costello and Kruse by United States mail copies of a 31-page document entitled "Constructive Notice of Non-Judicial/Pre-Judicial Commercial Process and Intent to File Security Instrument and Commercial/Common Law Lien" (Notice of Intent). He recorded the original with the Kitsap County Records Department.
The notice of intent alleged, in part, that certain named parties, including Judges Costello and Kruse, attempted to prosecute Stephenson without a grand jury indictment, issued bench warrants for his arrest, and violated their oaths of office.[1] It demanded that the named parties:
take what ever action is required to cause the action in the Superior Court of Washington in and for the County of Kitsap cause # XX-X-XXXXX-X to be dismissed with prejudice and all records of this action essponged (sic).
Finally, it contained Stephenson's threat to file a $7,914,100 lien against the judges' properties if they failed to meet his demands.
In response to a show cause order served upon him, Stephenson filed the threatened liens. Following a hearing, a superior court judge from another county struck the liens, finding no basis in law or fact supporting them. The visiting judge specifically found that Stephenson filed these liens with malicious intent and for the purpose of influencing the judges to alter rulings or decisions they made in official proceedings in the course of their duties as public servants.
The State then charged Stephenson with two counts of intimidating a public servant in violation of RCW 9A.76.180. Based upon stipulated facts, the trial court found Stephenson guilty as charged.

I. Constitutional Overbreadth
Stephenson contends that the intimidating a public servant statute is unconstitutionally overbroad because it criminalizes a substantial amount of constitutionally protected speech or conduct. RCW 9A.76.180 provides that:
(1) A person is guilty of intimidating a public servant if, by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant.
....
(3) "Threat" as used in this section means
(a) to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or[[2]]
(b) threats as defined in RCW 9A.04.110(25).
Here, the State proceeded exclusively under subsection (3)(b), relying upon the definition of threat in RCW 9A.04.110(25)(j). It describes a threat as a direct or indirect communication with the intent
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships.
A criminal statute that "sweeps constitutionally protected free speech activities within its prohibitions" may be overbroad and thus violate the First Amendment. City of Seattle v. Abercrombie, 85 Wash.App. 393, 397, 945 P.2d 1132, review denied, 133 Wash.2d 1005, 943 P.2d 663 (1997); Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940). But, "[a]pplication of the overbreadth doctrine is strong medicine"; courts employ it "sparingly and only as a last resort," upholding the constitutionality of statutes if possible. State v. Halstien, *41 122 Wash.2d 109, 122-23, 857 P.2d 270 (1993); City of Tacoma v. Luvene, 118 Wash.2d 826, 839-40, 827 P.2d 1374 (1992); Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).
In considering an overbreadth challenge, we first consider whether the challenged statute reaches constitutionally protected speech or expression and whether it proscribes a real and substantial amount of speech. If the answer to those two questions is yes, we must strike the statute as overbroad unless the regulation of protected speech is constitutionally permissible or it is possible to limit the statute's construction so that it does not unconstitutionally interfere with protected speech. City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (citing Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987)).

A. Constitutionally Protected Speech
The First Amendment generally prohibits government interference in speech or expressive conduct. Halstien, 122 Wash.2d at 121, 857 P.2d 270. Although "true threats" do not enjoy this protection, Stephenson's notice of intent does not fit the definition of a true threat. City of Seattle v. Ivan, 71 Wash.App. 145, 150-51 n. 3, 856 P.2d 1116 (1993); see, e.g., State v. Kepiro, 61 Wash.App. 116, 124-25, 810 P.2d 19 (1991).
A true threat is
a statement "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual]."
United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.1990) (quoting United States v. Hoffman, 806 F.2d 703, 707 (7th Cir.1986)); United States v. Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir.1990) ("true" threat is one where a reasonable person would foresee that the listener will believe she will be subject to physical violence upon her person). Stephenson threatened harm to the judges' financial conditions, not their health or safety. Consequently, the definition of threat in RCW 9A.04.110(25)(j) encompasses both protected and unprotected speech, and Stephenson's notice of intent was entitled to some First Amendment protection. Khorrami, 895 F.2d at 1192.

B. A Substantial Amount of Speech
The extent to which a statute "chills or burdens constitutionally protected conduct" turns on whether the statute's prohibition against protected speech or conduct is "real and substantial" compared to its plainly legitimate sweep. Halstien, 122 Wash.2d at 123, 857 P.2d 270; Luvene, 118 Wash.2d at 841, 827 P.2d 1374. The intimidation statute, RCW 9A.76.180(3)(a), and the threat definition statute, RCW 9A.04.110(25)(a) and (c),[3] specifically criminalize the "true threats" that RCW 9A.04.110(25)(j) also encompasses. The remaining types of threats listed in subsection (j), threats of harm to a person's business, financial condition, or personal relationships, all enjoy some constitutional protection. Consequently, we conclude that RCW 9A.04.110(25)(j)'s prohibitions encompass a "real and substantial" amount of protected speech.

C. Constitutionally Permissible Prohibition
The government may regulate even protected speech in some circumstances. Huff, 111 Wash.2d at 926, 767 P.2d 572. The amount of permissible regulation depends upon whether the speech is public or private; the First Amendment affords more protection to speech in a public forum, a place traditionally devoted to assembly and debate, and to channels of communication used by the public at large for assembly and speech. Ivan, 71 Wash.App. at 152, 856 P.2d 1116. Any regulations must be viewpoint neutral *42 and reasonable as to any time, place, or manner restrictions. Huff, 111 Wash.2d at 927, 767 P.2d 572.
The statute here could apply to communications made in either a public or private forum. But as the court in Ivan noted, this type of speech "is more appropriately analyzed as taking place in a non-public forum because of the private nature of the proscribed behavior; the statute contemplates private communications between individuals." Ivan, 71 Wash.App. at 152, 856 P.2d 1116. See also Huff, 111 Wash.2d at 927, 767 P.2d 572 (because telephone harassment ordinance regulates speech of a private nature, nonpublic forum standard applies). The sender of messages designed to frighten public officers into making official decisions based upon fears and concerns for their personal welfare, rather than upon the law or appropriate considerations of public benefit, generally will not disseminate the messages using forums traditionally used by the public for assembly, speech, or debate. Thus, we apply the standards for private speech.
The governmental regulation of speech in a nonpublic forum does not violate the First Amendment if "the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral.'" City of Seattle v. Eze, 111 Wash.2d 22, 32, 759 P.2d 366, 78 A.L.R.4th 1115 (1988) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985)). In determining the reasonableness of a regulation, we consider its relation to the overall problem the government seeks to correct. Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 127, 937 P.2d 154, 943 P.2d 1358 (1997).
The plain language of RCW 9A.76.180 suggests several purposes. First, it protects public servants from threats of substantial harm based upon the discharge of their official duties. See State v. Hansen, 122 Wash.2d 712, 716-718, 862 P.2d 117 (1993) (legislative intent behind similar intimidating a judge statute, RCW 9A.72.160(1),[4] is to "protect judges from retaliatory acts" because of past official actions). Second, it protects the public's interest in a fair and independent decision-making process consistent with the public interest and the law. And third, by deterring the intimidation and threats that lead to corrupt decision making, it helps maintain public confidence in democratic institutions.
The purposes promoted by the statute are compelling in a democracy. See, e.g., City of Hoquiam v. Public Employment Relations Comm'n, 97 Wash.2d 481, 488, 646 P.2d 129 (1982) (participation in decision-making process by person potentially interested or biased is the evil the appearance of fairness doctrine seeks to prevent); In re Matter of Stockwell, 28 Wash.App. 295, 299, 622 P.2d 910 (1981) (public officials must be objective and free as possible of entangling influences). By targeting only threats of "substantial harm" that are designed to "influence a public servant's vote, opinion, decision, or other official action as a public servant," the challenged portion of the statute is narrowly tailored to address the overall problem it seeks to correct. RCW 9A.76.180; RCW 9A.04.110(25)(j). It prohibits only those threats related to future decision making and to substantial interests. It does not encompass threats of harm based upon past decisions. Nor does it prohibit threats to do *43 minor injury to the official's financial situation or other protected interests.
Stephenson asserts that the statute sweeps too broadly and could encompass even a threat to file and run against a public official to coerce a decision to the threatener's liking. Although it is possible to conceive of circumstances in which application of the statute would be unreasonable, that alone will not render it unconstitutional. Members of City Council v. Taxpayers, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Unless there is a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the court, we will not declare it facially invalid on overbreadth grounds. Taxpayers, 466 U.S. at 801, 104 S.Ct. at 2126. We do not see that danger here.
Stephenson also relies upon the analysis in Ivan, where the court found a Seattle Municipal Code (SMC) coercion ordinance facially overbroad and not susceptible to a limiting construction.[5]Ivan, 71 Wash.App. at 158, 856 P.2d 1116. The Ivan court apparently considered all ten definitions of threat contained in the SMC, many of which prohibited communications beyond mere fighting words and other nonprotected speech.[6]See Ivan, 71 Wash.App. at 151-53, 856 P.2d 1116.
The statute at issue here is distinguishable for several reasons. First, it protects a more significant governmental interest than the coercion ordinance in Ivan. The challenged Seattle ordinance prohibited coercion against any person. The Ivan court rejected the City's argument that the "`societal need for the law' justified its incidental effect on free speech." 71 Wash.App. at 153, 856 P.2d 1116. Quoting the Supreme Court in NAACP v. Claiborne Hardware Co., 458 U.S. 886, 910-12, 102 S.Ct. 3409, 3424-25, 73 L.Ed.2d 1215 (1982), the Ivan court stated: "Speech does not lose its protected character... simply because it may embarrass others or coerce them into action...." 71 Wash. App. at 153, 856 P.2d 1116.
The public's interest in open and fair government decision making provides a far more compelling justification for an incidental limitation of protected speech. The threat of substantial harm to a public servant's "health, safety, business, financial condition, or personal relationship" jeopardizes that interest.
Second, the Ivan court had before it all the definitions of "threat" contained in the challenged ordinance. Looking at the multiplicity *44 of ways in which one might convey a threat, the Ivan court concluded that the statute prohibited "such a wide range of speech that it is impossible to find its proscriptions reasonable." Ivan, 71 Wash.App. at 153, 856 P.2d 1116. As the Ivan court noted, the prohibition against accusing another of a crime could "proscribe prosecutors from plea bargaining," the prohibitions against exposing or publicizing facts and revealing significant information could "impinge on freedom of the press to release information," the prohibition against testifying or providing information about a legal claim could "discourage a witness from testifying," and the prohibition against threats to strike and boycott could "chill the ability of groups to engage in boycotts and collective bargaining." Ivan, 71 Wash.App. at 153, 856 P.2d 1116. Because the ordinance specifically prohibited "many communications besides those extortionate in nature," the Ivan court concluded that it was not narrowly tailored to address the City's interest "in protecting its citizens from extortion-like threats." 71 Wash.App. at 153-54, 856 P.2d 1116.
The challenge here involves only one subsection of the threat definition. The threats contained in that subsection are the same as those in section 10 of the Seattle ordinance. The Ivan court had no criticism of that portion of the ordinance. And we note that the threats contained in the challenged subsection are distinguishable from those discussed in Ivan in that they must be substantial, not threats that merely embarrass or inconvenience their target.
Finally, we note that the statute differs from the Seattle ordinance in requiring a specified state of mind. The Seattle ordinance criminalized any threatening communications that happened to induce certain responses. Ivan, 71 Wash.App. at 148, 154, 856 P.2d 1116. But a critical element of the statute here is the requirement that the defendant "attempt to influence" the targeted public servant's behavior. Threatening words or behavior by themselves do not violate the statute.
Considering the State's compelling interest in maintaining the integrity of government action and the narrow tailoring of the statute, we conclude that the challenged statute is reasonable in light of its purposes and is not unconstitutionally overbroad.[7]

II. "Public Servants"
Stephenson contends that the evidence is insufficient to prove that Judges Kruse and Costello were "public servants" because there is no evidence that they filed their oaths of office with the Secretary of State. Evidence is sufficient if, viewed in the light most favorable to the State, any rational trier of fact could find the essential elements beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992).
A "public servant" is
any person other than a witness who presently occupies the position of or has been elected, appointed, or designated to become any officer or employee of government, including a ... judge, judicial officer... and any person participating as an advisor, consultant, or otherwise in performing a governmental function[.]
RCW 9A.04.110(22).
According to RCW 2.08.080, a superior court judge must
before entering upon the duties of his office, take and subscribe an oath that he will support the Constitution of the United States and the Constitution of the state of Washington, and will faithfully and impartially *45 discharge the duties of judge to the best of his ability, which oath shall be filed in the office of the secretary of state.
Judges Kruse and Costello occupy the position of superior court judge and each took an oath of office "before entering upon the duties of his office." Wash. Const. art. IV, § 28; RCW 2.08.080.
We agree with the trial court's interpretation of RCW 2.08.080. The filing of the oath with the Secretary of State is not a condition precedent to assuming the duties of office. The clause, "which oath shall be filed," does not relate to the antecedent clause "before entering upon the duties of his office." Nor does it relate to the list of judicial requirements connected by "ands" ("take and subscribe an oath"). Thus, the failure to file the oath did not disqualify the judges from office.
Further, both judges were "in actual possession of the office [of judge], exercising its functions and discharging its duties under color of title." State v. Franks, 7 Wash.App. 594, 596, 501 P.2d 622 (1972). Thus, they also occupied their positions as judges de facto. Franks, 7 Wash.App. at 596, 501 P.2d 622. There was sufficient evidence that the targeted judges were public servants.
We affirm.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
HOUGHTON, C.J., and HUNT, J., concur.
NOTES
[1] Stephenson had earlier filed a lawsuit in federal district court making the same allegations and demanding in excess of 100 million dollars. That action also named Judges Costello and Kruse, among others. The court dismissed the lawsuit on a Fed.R.Civ.P. 12(b) motion.
[2] RCW 9A.76.180 (3)(a) describes "true" threats that are outside the scope of protected speech. State v. Kepiro, 61 Wash.App. 116, 125, 810 P.2d 19 (1991).
[3] RCW 9A.04.110 provides:

(25) "Threat" means to communicate, directly or indirectly the intent:
(a) To cause bodily injury in the future to the person threatened or to any other person; or
...
(c) To subject the person threatened or any other person to physical confinement or restraint.
[4] RCW 9A.72.160 provides:

(1) A person is guilty of intimidating a judge if a person directs a threat to a judge because of a ruling or decision of the judge in any official proceeding, or if by use of a threat directed to a judge, a person attempts to influence a ruling or decision of the judge in any official proceeding.
(2) "Threat" as used in this section means:
(a) To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or
(b) Threats as defined in RCW 9A.04.110(25).
(3) Intimidating a judge is a class B felony. In this case, the State filed an amended complaint charging Stephenson with violating the intimidating a judge statute. For reasons not set forth in the record, the State apparently "agreed," in order to facilitate a trial on stipulated facts, to file a second amended complaint charging Stephenson under the more general intimidating a public servant statute. The second amended complaint is not in the record on appeal.
[5] The coercion ordinance at issue in Ivan provided:

A. A person is guilty of coercion if by use of a threat he compels or induces a person to engage in conduct which the latter has a legal right to abstain from, or to abstain from conduct which he has a legal right to engage in.
B. "Threat" as used in this section means:
1. To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or
2. Threats as defined in Section 12A.08.050(L).
SMC 12A.06.090.
Section 12A.08.050(L) provides:
"Threat" means to communicate, directly or indirectly, the intent:
1. To cause bodily injury in the future to another; or
2. To cause damage to property of another; or
3. To subject another person to physical confinement or restraint; or
4. To accuse another person of a crime or cause criminal charges to be instituted against another person; or
5. To expose a secret or publicize an asserted fact, whether true or false, tending to subject another person to hatred, contempt, or ridicule; or
6. To reveal significant information sought to be concealed by the person threatened; or
7. To testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
8. To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or
9. To bring about or continue a strike, boycott, or other similar collective action with the intent to obtain property which is not demanded or received for the benefit of the group with the actor purports to represent; or
10. To do any other act which is intended to harm substantially any person with respect to his health, safety, business, financial condition, or personal relationships.
71 Wash.App. at 148-49, 856 P.2d 1116.
[6] The Ivan court did not discuss threats under SMC 12A.08.050(L)(10), which contains the same language as RCW 9A.04.110(25)(j).
[7] Our result is consistent with cases in other jurisdictions that have considered the constitutional overbreadth of statutes with similar purposes and similar restrictions. See, e.g., People v. Janousek, 871 P.2d 1189, 1192-93 (Colo.1994) (statute prohibiting attempts to influence public servants by means of deceit or by threat of violence or economic reprisal not facially overbroad because it was narrowly tailored to enable the state to proscribe the type of conduct that rises to a level of criminal culpability and placed a minimal burden on a person's speech interests); CISPES v. Federal Bureau of Investigation, 770 F.2d 468, 471 n. 2, 474-75 (5th Cir.1985) (federal statute that criminalizes the act of willfully intimidating or threatening a foreign official in the performance of his official duties is not facially overbroad because it is an "appropriate and necessary means of addressing the undeniably important governmental interest of protecting foreign officials").