## ROSARIO POLLETTA *v.* ESI MAIL PHARMACY SERVICE, INC., ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV03–0181838S

Memorandum filed May 10, 2005

*Grady & Riley, LLP*, for the plaintiff.

*Husch & Eppenberger, LLC*, pro hac vice, of the Missouri bar, for the named defendant.

*Law Offices of Rodd Mantell,* for the defendant
Susanna Polletta.

SHEEDY, J. The defendant ESI Mail Pharmacy Service, Inc. (service), is a mail order pharmaceutical service that had been filling and mailing to the plaintiff, Rosario Polletta, a medication known as Renagel for some months without incident until, one day, the plaintiff's wife, the defendant Susanna Polletta, received a medication from the service in a package addressed to her husband. The package, however, contained a drug known as Welchol intended for a patient by the name of Corrine Locust.[1] The plaintiff's wife opened the package, placed the tablets in pillboxes for the plaintiff's consumption and he, in fact, did ingest the Welchol pills for a "period of months." Within a day of the delivery to the plaintiff, Locust received the plaintiff's prescription for Renagel and is alleged to have notified the service of the error and to have returned the plaintiff's medication to the service. It is further alleged that the service did not notify the plaintiff either that Locust had received the plaintiff's medication or of the possibility that the plaintiff had been sent the wrong drug, nor did the service make any inquiry of the plaintiff regarding the same. As a result of receiving and ingesting the wrong medication, the plaintiff claims a significant decline in his health.

The plaintiff's amended complaint of November 15, 2004, alleges six causes of action. The complaint alleged one count of negligence against the service and one count of negligence against the plaintiff's wife for not

---

[1] The package was addressed to the plaintiff but the medication contained therein was for "Corrine Locust for Welchol." The clear meaning of the language employed is that the service is alleged to have sent a prescription intended for Locust to the plaintiff, not that it mislabeled the prescription but, rather, that it sent it to the wrong person.

reading the label on the prescription bottle. The remaining four counts are against the service for recklessness, professional malpractice, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Count six, the CUTPA count, alleges that the service (1) was in the business of filling prescriptions and sending them by mail; (2) was aware its delivery system lacked the controls necessary to guard against delivery errors; (3) was aware of the need for a quality assurance program to protect the public from misdelivery of prescription medication; and (4) despite the danger to consumers, neglected to implement or to maintain an adequate business practice or quality assurance program to protect against misdeliveries or to notify consumers of delivery errors. It further alleges that the service's failure to develop a quality assurance program "increased the risk and danger to its customers" and is "immoral, unethical, oppressive and/or unscrupulous and has caused substantial injury to numerous consumers including the [p]laintiff."

The service has moved to strike count six, alleging that a CUTPA claim is not available to the plaintiff because the essence of the claims asserted sound in professional malpractice. The plaintiff has objected and states that the packaging or shipping of this medication involves the entrepreneurial aspects of the service's business and, thus, a CUTPA cause of action is available. The parties have filed memoranda of law and, on February 7, 2005, a request for adjudication. They have waived oral argument and consented to the court's adjudication of the matter on the papers.

I

APPLICABLE LAW

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Internal quotation marks

omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves,* 262 Conn. 480, 498, 815 A.2d 1188 (2003). It tests whether the complaint states a claim on which relief can be granted. Practice Book § 10-39 (a); *Vacco* v. *Microsoft Corp.,* 260 Conn. 59, 65, 793 A.2d 1048 (2002). The trial court's role is to examine the complaint and construe it in favor of the pleader. *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.,* 260 Conn. 766, 772, 802 A.2d 44 (2002). Specifically, the court must "assume the truth of both the specific factual allegations and any facts fairly provable thereunder . . . [and] read the allegations broadly, rather than narrowly." (Internal quotation marks omitted.) *Craig* v. *Driscoll,* 262 Conn. 312, 321, 813 A.2d 1003 (2003). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank,* 219 Conn. 465, 471, 594 A.2d 1 (1991).

## II

## APPLICATION OF LAW TO FACT

The law is clear that physicians and other health care providers, such as the parties concede that the service is, are properly the subject of a CUTPA claim but only as pertaining to the entrepreneurial or commercial aspects of the profession and "aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel." *Haynes* v. *Yale-New Haven Hospital,* 243 Conn. 17, 38, 699 A.2d 964 (1997); see also *Janusauskas* v. *Fichman,* 264 Conn. 796, 809, 826 A.2d 1066 (2003); *Sherwood* v. *Danbury Hospital,* 252 Conn. 193, 213, 746 A.2d 730 (2000). Resolution of this motion, therefore, requires close examination of the conduct that is claimed in paragraph twenty-one of count six of the complaint to be "immoral, unethical, oppressive and/

or unscrupulous . . . ." Count six asserts conduct directed not to the medical competence or strategy employed by the pharmacist here, but, to the delivery system utilized to transport the health care service to the recipient. The claims of count six are not that the pharmacist failed to meet the requisite standard of care in filling the prescription of the plaintiff, but that the prescription having been filled and, it is implied, correctly labeled, the pharmacy then addressed the exterior package containing the medication incorrectly. Specifically, the allegations claimed to violate CUTPA are that the service was aware that its delivery system lacked the controls necessary to guard against delivery errors, was aware of the need to develop quality assurance programs to protect the public from the misdelivery of prescription medication, and yet, despite the awareness and the danger posed to consumers, neglected or refused to develop or to maintain "an adequate business practice and quality assurance program" to prevent such errors or to notify consumers of such errors once discovered.

In *Haynes*, our Supreme Court cited *Quimby* v. *Fine*, 45 Wash. App. 175, 180, 724 P.2d 403 (1986), and quoted *Ikuno* v. *Yip*, 912 F.2d 306, 312 (9th Cir. 1990), in which the United States Court of Appeals for the Ninth Circuit applying Washington law concluded that the practice of medicine may give rise to consumer protection act claims when the actions at issue are chiefly concerned with such "entrepreneurial" aspects of the practice as the "solicitation of business and billing practices . . . ." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 35–36. The *Haynes* court favorably cited another Washington Court of Appeals case in which "billing" was identified as an entrepreneurial aspect of a hospital's business. Id., 36, citing *Jaramillo* v. *Morris*, 50 Wash. App. 822, 827, 750 P.2d 1301, review denied, 110 Wash. 2d 1040

(1988). Six years later, our Supreme Court specifically included "billing practices" as pertaining to the "entrepreneurial" aspects of the practice of medicine. *Janusauskas* v. *Fichman,* supra, 264 Conn. 809. *Haynes* also approvingly cited an Illinois case in which a District Court concluded that "[t]he distinction between the business aspects [of] medicine and the actual practice of medicine or the non-business aspects of medicine is crucial . . . ." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital,* supra, 37, quoting *Gadson* v. *Newman,* 807 F. Sup. 1412, 1416 (C.D. Ill. 1992).

The case presently before the court is not chiefly concerned with the service's competency to deliver the health care service of interpreting or of filling of prescriptions. It is in no way an allegation that the staffing, training, equipment or support personnel did not meet the applicable standard of care and it is not, therefore, in its core allegations, "chiefly" a medical negligence claim. The claim here is that the lack of controls permitted the incorrect addressing of the package to be mailed and, once the service was put on notice by Locust that she had received the plaintiff's prescription by error, the same "business practices" operated so as to prevent the service from notifying the plaintiff. It is the conduct of its business, not the competence or strategy of the conduct of its pharmaceutical practice, which is claimed.

### III

### CONCLUSION

This court perceives little difference between the claimed delivery operation and the billing practices our decisional law accepts as entrepreneurial. Construing the allegations of count six broadly as is required when construing a motion to strike, this court cannot conclude that count six is legally insufficient. The motion to strike is, therefore, denied.