[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE AMENDED CUTPA CLAIMS
By a memorandum of decision dated February 23, 2000, this court struck those counts of the complaints (or, in the case involving Ronald G. Cone, the counterclaim) in the above captioned actions that alleged violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110, et seq. The court based its ruling on the standard set forth by the Connecticut Supreme Court with regard to the applicability of CUTPA to claims based on transactions with medical providers:
 We thus conclude that the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice into a CUTPA claim.
Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34 (1997). The Court cited the Haynes standard with approval and applied it in Sherwood v.Danbury Hospital, 252 Conn. 193 (2000).
Plaintiffs Babcock, Bonaffini, Clarke, and Korchman and counterclaimant Cone ("plaintiffs") have pleaded over pursuant to Practice Book §10-44, again alleging that Bridgeport Hospital (and, in the Babcock, Bonaffini and Clarke cases, Southern Connecticut Health System, Inc.) ("hospital") violated CUTPA.
The hospital has moved to strike the CUTPA count in each of the cases on the ground that the plaintiffs continue to allege only claims for medical malpractice recast as CUTPA claims.
Standard of Review
CT Page 12951
The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Sherwood v. Danbury Hospital, supra, 252 Conn. 213; NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214-215 (1992);Ferryman v. Groton, 212 Conn. 138, 142 (1989); Practice Book §10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. ATC Partnership v. Windham,251 Conn. 597, 603, cert. denied, 147 L.Ed.2d 249 (1999); Dodd v.Middlesex Mutual Assurance Co., 242 Conn. 375, 378 (1997); Napoletano v.CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 232-33, cert. denied, 137 L.Ed.2d 308 (1990).
In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff.Bohan v. Last, 236 Conn. 670, 675 (1996); Sassone v. Lepore, 226 Conn. 773,780 (1993); Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra,224 Conn. 215; Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1998). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts necessarily implied and fairly provable under the allegations." Forbes v. Ballaro, 31 Conn. App. 235, 239
(1993). Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985); Fortini v.New England Log Homes, Inc., 4 Conn. App. 132, 134-35, cert. dismissed,197 Conn. 801 (1985).
The New CUTPA Claims
All of the plaintiffs make the same allegations in their amended CUTPA claims. They claim that they suffered complications because at the time they were elective inpatients at the hospital, the hospital was experiencing an outbreak of Methicillin-Resistant Staphylococcus Aureus (MRSA), a bacterial infection that the plaintiffs allege is difflcult to treat and potentially fatal to those suffering from other ailments. They allege that the hospital misrepresented whether such infection was present and covered up its presence from the entrepreneurial motivation of retaining and attracting patients.
The plaintiffs allege that the hospital violated CUTPA in four distinct ways.[1] The court will consider each claim separately.
Claim of General Advertising
CT Page 12952 The plaintiffs allege that
 On information and belief, as a result of the competitive nature of the health care marketplace and as part of the entrepreneurial and business aspects of the provision of services, the Defendant[s] advertise[s] to health care professionals and the general public regarding the services available at the Hospital in order to attract business, provide revenues and increase its market share of patients seeking hospital-based health care services.
(Babcock Revised Amended Complaint 7/7/00, Count 3, para. 7; Bonaffini Revised Amended Complaint 7/7/00, Count 3, para. 8; Korchman Revised Amended Complaint 8/1/00, Count 3, para. 4; Cone Revised Amended Counterclaim, Count 3, para. 4; Clarke Revised Amended Complaint, Count 5, para. 6.)
The plaintiffs do not, however, follow up this allegation with any allegation that the hospital published advertising making false representations about the presence of MRSA, nor do the plaintiffs allege that they relied upon any advertising containing such misrepresentations in choosing to enter Bridgeport Hospital for health care.
Publication of truthful advertising concerning a health care facility does not violate CUTPA. Haynes v. Yale-New Haven Hospital, supra,243 Conn. 39.
Claim of Intentional Departures from Standard of Care
The plaintiffs allege as follows:
 As a consequence of Defendant[s]' intentional and deliberate business decision to cover-up the existence of the MRSA outbreak, Defendant[s] also intentionally and deliberately failed to follow standard infection control precautions and failed to employ standard surveillance methods to control such infection, in that, Defendant[s] did not, among other things
 (a) promptly isolate all MRSA patients and patients suspected of having MRSA infections;
(b) promptly cohort the staff caring for the MRSA patients;
 (c) promptly instruct all staff members and other CT Page 12953 health care providers having contact with patients known to have or suspected of having MRSA of the nature of the infection and the appropriate infection control measures to be taken;
 (d) inform those patients who contracted MRSA of that fact in a timely manner;
 (e) did not notify family members of infected patients in a timely manner;
(f) dedicate specific equipment for MRSA-infected patients;
(g) display contact precaution signs;
 (h) mandate that visitors to the Hospital follow standard contact and barrier precautions regarding patients with MRSA;
 (i) limit the movement and transport of patients infected with the MRSA within the Hospital;
 (j) adopt specific cleaning and disinfectant practices regarding hospital equipment and environmental surfaces that came in contact with MRSA patients.
(Babcock Revised Amended Complaint 7/7/00, Count 3, para. 11; Bonaffini Revised Amended Complaint 7/7/00, Count 3, para. 12.)
 Similarly, Korchman and Cone make the following allegations:
 Despite the existence of the MRSA outbreak, Defendant also made the intentional and deliberate business decision that Bridgeport Hospital would not follow standard infection control precautions or employ standard surveillance methods to control such infection in one or more of the following ways:
(a) It failed to promptly isolate MRSA patients from non-MRSA patients;
 (b) It failed to promptly follow isolation precautions with respect to those patients known to have or suspected of having MRSA;
CT Page 12954 (c) It failed to promptly instruct all staff members and other health care providers having contact with patients known to have or suspected of having MRSA of the nature of the infection and the appropriate infection control measures to be taken;
 (d) It failed to inform those patients who contracted MRSA of that fact in a timely manner;
 (e) It failed to notify families of infected patients in a timely manner;
 (f) It failed to mandate that visitors and Hospital personnel follow standard contact and barrier precautions regarding patients with MRSA;
 (g) It failed to cohort Hospital personnel who treated patients infected with MRSA;
 (h) It failed to determine the source of the MRSA infection in a timely manner;
 (i) It failed to develop, and have in place, adequate policies, procedures and guidelines to reduce the presence of MRSA in the Hospital;
 (j) It failed to follow its own policies and procedures to prevent the spread of MRSA in the Hospital;
(k) It failed to dedicate specific equipment for MRSA-infected patients;
(l) It failed to display contact precaution signs;
 (m) It failed to limit the movement and transport of MRSA-infected patients within the Hospital;
 (n) It failed to adequately clean and disinfect hospital equipment and environmental surfaces; and
 (o) It failed to adopt specific cleaning and disinfectant practices regarding Hospital equipment and environmental surfaces that came in contact with MRSA patients.
(Korchman Revised Amended Complaint 8/1/00, Count 3, para. 8; Cone CT Page 12955 Revised Amended Counterclaim, Count 3, para. 8.) Clarke makes the same allegations, though phrased in a slightly different manner. (Clarke Revised Amended Complaint, Count 5, para. 10.)
These allegations amount to claims that the hospital failed to adhere to the standards of care applicable to hospitals. The Supreme Court has ruled in Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 38, that "the touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from medical competenceor aside from medical malpractice based on the adequacy of staffing,training, equipment, or support personnel." (Emphasis supplied.) The plaintiffs have alleged that the entrepreneurial or business aspects are implicated, however, the aspects at issue are not "aside from" medical malpractice and medical standards, but are squarely within that area of the health care provider's functions. Accordingly, under the Haynes
standard, the above allegations fail to state a cause of action under CUTPA.
In essence, the plaintiffs allege that for reasons having to do with its entrepreneurial and commercial interests, that is, attracting and retaining fee-generating patients, the hospital intentionally failed to adhere to the standard of care with regard to responding to an MRSA outbreak. As the Court stated in Haynes, supra, within the framework of the dichotomy identified in the quotation from this case set forth above, the trial court "must review the plaintiffs allegations of CUTPA violations and look to the underlying nature of the claim to determine whether it is really a medical malpractice claim recast as a CUTPA claim." Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 38.
A reasonable way to approach this inquiry is to ask whether the practice identified would constitute an unfair trade practice in the entrepreneurial functions of a health care provider if it were not also a failure to adhere to the standard of care. If the practice alleged to be an unfair means of pursuing an entrepreneurial goal is unfair only because it involves a violation of the medical standard of care, then the claim is essentially a medical malpractice claim.
Disclosure of medical risks is part of the standard of care for provision of medical services Petriello v. Kalman, 215 Conn. 377, 385
(1990); Logan v. Greenwich Hospital Assn., 191 Conn. 282, 292 (1983). The conduct claimed to be a CUTPA violation in this allegation is the failure to disclose medical risks. Applying the Haynes test, this court concludes that the allegation relates to the defendants' obligations as a health care provider, not to its obligations with regard to its commercial or entrepreneurial functions. CT Page 12956
The plaintiffs assert that the dichotomy between medical and commercial aspects may be applied on the basis of characterizing the motivation of the defendant. The plaintiffs take the position that because the hospital is alleged to have acted out of commercial motivation, any acts carried out with such motivation are by their nature entrepreneurial or commercial. An inquiry into motivation is not a useful yardstick. Virtually any choice in medical treatment can be characterized as having some cost impact and thus be alleged to be related to commercial aspects of provision of health care. The allegations at issue in Haynes presented precisely such a situation. The Haynes plaintiffs alleged that although Yale-New Haven Hospital was certified as a trauma center and held itself out as such, it failed to equip and staff itself to perform adequately in that capacity. Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 38. The Supreme Court did not find this implicit allegation of cost-cutting a reason to regard the claim as involving the commercial rather than the health care aspects of the hospital's operation. The dichotomy recognized by the Supreme Court with regard to CUTPA claims against health care providers is not based on whether the motivation for an act is medical judgment or commercial advantage, but whether the act is part of the practice of medicine or part of the business of running a facility. To date, the Supreme Court has approved the application of CUTPA only to the business operations that are the same for health care providers as for a business offering any other kind of product or service, such as billing or transactions involving corporate assets. Haynes v. Yale-New HavenHospital, supra; Fink v. Golenbock, 238 Conn. 183 (1996).
This court finds that the allegation set forth above does not state a cause of action under CUTPA.
Claim of Intentional Misrepresentation
Plaintiffs further allege that the defendants failed to advise them of the risks posed by MRSA and covered-up the presence of the MRSA outbreak by taking steps to thwart discovery of the situation.
 Defendants intentionally misrepresented to the general public, including the plaintiffs, that the Hospital provided an environment that did not present an undue risk of contracting an MRSA infection when, in fact, it did. Defendants omitted to advise the public, and plaintiffs specifically, that the Hospital was and had in the past for a period of at least one year incurred significant and substantial MRSA infections which had not been satisfactorily resolved and controlled.
CT Page 12957 (Babcock Revised Amended Complaint 7/7/00, Count 3, para. 14; Bonaffini Revised Amended Complaint 7/7/00, Count 3, para. 15; see also Korchman Revised Amended Complaint 8/1/00, Count 3, para. 9; Cone Revised Amended Counterclaim, Count 3, para. 9; Clarke Revised Amended Complaint, Count 5, para. 11.) The allegation, which must be read as a whole, since it appears as a separate paragraph with integral allegations, alleges not an affirmative misrepresentation of fact, but nondisclosure of facts that the plaintiffs assert should have been communicated. The allegation states in essence that by failing to notify prospective patients of an MRSA outbreak, the hospital was misrepresenting that no risk from such an outbreak existed. The plaintiffs have not alleged that the hospital stated that there was no risk associated with treatment in their facility, nor that no MRSA infection was present. Again, the allegation is that the failure to disclose the medical risks of the health care to be provided by the hospital. The obligation to make such disclosures so that a patient may make an informed choice whether to undergo care, including care that consists of admission to a hospital, relates to the provision of health care. The plaintiffs are not alleging misrepresentation in billing or rates charged, which would relate to the hospital's commercial aspects, see Haynes v. Yale-New Haven Hospital,
supra, 243 Conn. 36, quoting Jaramillo v. Morris, 50 Wash. App. 822, 827,750 P.2d 1301, rev, denied, 110 Wash.2d 1040 (1988), but misrepresentations by omission of disclosure of the risks of the hospital's care. Disclosure of medical risks is a function related to the provision of medical services, not to the operation of the business of running a hospital.
Fairly read, the plaintiffs' claims allege the same "holding out" argument that was rejected by the Supreme Court in Haynes v. Yale-NewHaven Hospital, supra, 243 Conn. 38.
The plaintiffs' claim is a medical malpractice claim of failure to inform of medical risks recast as a CUTPA claim. Under the Haynes
standard, the plaintiffs fail to state a cause of action under CUTPA.
Conclusion
The various allegations in the plaintiffs' amended complaints and in plaintiff Cone's counterclaim fail to state a cause of action under CUTPA. The motion to strike the counts in which CUTPA claims are asserted is granted.
Beverly J. Hodgson Judge of the Superior Court