[No. 14143-1-I. Division One. August 20, 1986.]

MELVIN H. QUIMBY, ET AL, *Respondents,* v. CHARLES S. FINE, ET AL, *Petitioners.*

*Gerald A. Palm* and *Williams, Lanza, Kastner & Gibbs,* for petitioners.

*Frederick Ockerman, James Caplinger,* and *Allerdice & Boyack,* for respondents.

REVELLE, J.*—Dr. Charles Fine appeals from the trial court's denial of his summary judgment motion. He maintains that the plaintiffs Melvin H. Quimby's and Rose M. Quimby's wrongful birth action did not fall under the Consumer Protection Act, RCW 19.86, and was effectively barred by the statute of limitation, RCW 4.16.350. The Supreme Court denied a motion to transfer December 6, 1984. We affirm.

On December 28, 1979, Dr. Fine removed a vaginal cyst and performed tubal ligation sterilization procedure on Mrs. Quimby. She maintains that he substituted a Hulka

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Clip tubal ligation procedure in lieu of a Pomeray procedure. The Quimbys claim that the substitution was made without the wife's consent or without advising her of the risks or alternative procedures available. Approximately 1 month later, Mrs. Quimby became pregnant. On October 23, 1980, she gave birth to Kari, a baby girl. Kari was born with multiple birth defects. She died on August 11, 1981.

The Quimbys immediately consulted an attorney. He requested Mrs. Quimby's medical records from Dr. Fine on September 28, 1981. In October of 1982, the lawyer advised the Quimbys that they had no cause of action unless the Washington State Supreme Court ruled favorably in *Harbeson v. Parke–Davis, Inc.,* 98 Wn.2d 460, 656 P.2d 483 (1983) which was then before that court. The Quimbys maintain that they did not know that their cause was actionable until they changed from that first attorney to their present attorneys. On January 6, 1983, *Harbeson,* at 462, recognized two new causes of action, wrongful birth and wrongful life.

On October 4, 1983, the Quimbys filed a complaint against Dr. Fine seeking damages for the wrongful birth. No claim is made for the failed sterilization that led to the conception. Dr. Fine moved for summary judgment contending that Quimbys' claim was barred by the statute of limitation and that the Consumer Protection Act was inapplicable to their causes of action. The Quimbys moved to strike Dr. Fine's affirmative defense of the statute of limitation bar. The court denied Dr. Fine's motions and granted the Quimbys' motion. Dr. Fine now appeals.

### STATUTE OF LIMITATION

Dr. Fine first contends that the trial court erred when it denied his motion for summary judgment because the Quimbys' claim was barred by the statute of limitation as Kari was conceived more than 3 years before the Quimbys filed their claim. The Quimbys maintain that they are not barred because they filed their claim within 3 years of Kari's birth.

In ruling on a summary judgment motion, the trial court must consider the material evidence and all reasonable inferences therefrom in favor of the Quimbys, as the non-moving party. Only if there is no genuine issue of a material fact is Dr. Fine's motion entitled to summary judgment as a matter of law. If reasonable persons might reach different conclusions, then the court should deny the motion. *Wood v. Gibbons,* 38 Wn. App. 343, 345–46, 685 P.2d 619 (1984).

The relevant statute of limitation, RCW 4.16.350, provides that:

> Any civil action for damages for injury occurring as a result of health care which is provided after June 25, 1976 against:
>
> . . . a physician . . .
>
> . . .
>
> based upon alleged professional negligence *shall be commenced within three years of the act or omission alleged to have caused the injury or condition,* or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later . . .

(Italics ours.)

The statute, thusly, requires that a suit be filed within either of two periods; one measured from the date of actual or imputed discovery and a second, the longer 3–year period, measured from the event which gives rise to the cause of action. *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 119, 691 P.2d 178 (1984).[1]

█ We hold that the Quimbys' action was not barred by the 3–year statute of limitation because it began to run at the birth of Kari which was the event which gave rise to their wrongful birth claim.

The Quimbys' two theories of liability are medical negligence in performing the operation and lack of informed

---

[1]This is consistent with the general rule that a wrongful death action be commenced within 3 years of the date of death. RCW 4.16.080. *Huntington v. Samaritan Hosp.,* 101 Wn.2d 466, 468, 680 P.2d 58 (1984); *Dodson v. Continental Can Co.,* 159 Wash. 589, 294 P.2d 265 (1930).

consent. *Harbeson* held that in a wrongful birth action based on those theories, the "injury" is the birth of the defective child because the wrongful birth action is based on the parents' right to prevent a birth of a deformed child.[2] *Harbeson,* at 466–67. Physicians owe a duty to preserve that right. The physician breaches that duty when the physician's failure to inform the parents of material information or his negligent performance of some procedure results in the birth of a deformed child. *Harbeson,* at 466–67. Thus, in a wrongful birth action, the birth of the child is not only the injury, but also the physician's breach. Until that birth, a plaintiff cannot know whether she will miscarry or whether the child will be born alive, without defect. Nor can the parents know the extent of defects. In other words, until the birth the parents cannot know whether the physician breached his duty not to contribute to the birth of a deformed child. Therefore, since Kari's wrongful birth, which gave rise to the cause of action, was within 3 years of the Quimbys' filing of their complaint, the court did not err when it denied Dr. Fine's summary judgment and motion to strike on the statute of limitation question.[3]

### Consumer Protection Act

Dr. Fine next contends that the Consumer Protection Act cannot apply to either medical negligence or lack of informed consent. Denial of summary judgment on this issue was proper.

A private party may bring an action for damages under

---

[2]This conclusion is consistent with the court's determination in *Ball v. Mudge,* 64 Wn.2d 247, 391 P.2d 201 (1964) that a failed vasectomy which resulted in the birth of a healthy child did not give rise to a wrongful conception cause of action and consistent with the *Harbeson* court's refusal to address the question of whether the birth of a healthy child (wrongful conception/pregnancy) could ever be a breach of a duty owed a parent.

[3]Because of the disposition of this issue, it is unnecessary to reach whether the statute of limitation regarding the discovery rule began when the Quimbys' first attorney told them of the existence of the pending *Harbeson* case or when the *Harbeson* court announced the new cause of action.

the Consumer Protection Act, RCW 19.86.090, if the conduct complained of is unfair or consists of deceptive acts in the sphere of trade or commerce, it impacts the public interest, and it causes the plaintiff damage. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 785–91, 719 P.2d 531 (1986).

The learned professions, such as law or medicine, were previously not considered within the sphere of trade or commerce. Recently, the Supreme Court has declared that learned professions are not exempt from application of the Consumer Protection Act. *Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984). The court stated that for the existence of a cause of action under the Consumer Protection Act to be determined by whether a party was within a learned profession would "chart the Court on a semantic adventure of questionable value." *Short,* at 58 (quoting *United States v. National Soc'y of Professional Eng'rs,* 389 F. Supp. 1193, 1198 (D.D.C. 1974)).

In *Short,* the court held that the entrepreneurial aspects of a legal practice are conduct within the sphere of trade or commerce and are subject to the Consumer Protection Act. Entrepreneurial aspects include "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains and dismisses clients." However, claims of legal negligence or malpractice are exempt from the Consumer Protection Act since these claims relate to the competence of and the strategy employed by lawyers. *Short,* at 61.

We see no basis to distinguish the legal practice from the medical practice.[4] Therefore, the Quimbys' negligence claim paralleling legal negligence, as discussed in *Short,* is not under the Consumer Protection Act because it relates to the actual competence of the medical practitioner.

---

[4]*See also Short,* at 58 (implying that doctor's entrepreneurial conduct came under the Consumer Protection Act) (citing with favor *Arizona v. Maricopa Cy. Med. Soc'y,* 457 U.S. 332, 73 L. Ed. 2d 48, 102 S. Ct. 2466 (1982)).

However, we hold that the lack of informed consent claim against a health care provider may be within the scope of the Consumer Protection Act, if it relates to the entrepreneurial aspects of the medical practice. The Legislature has differentiated an action based on lack of informed consent from that of medical negligence. RCW 4.24.290; RCW 7.70.030, .040; *Harbeson,* at 471. Lack of informed consent[5] is not limited to breach of professional standards of care as defined in RCW 4.24.290.[6] *Miller v. Kennedy,* 11 Wn. App. 272, 280–99, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975). *Harbeson,* at 461–71, 477. Instead, a lack of informed consent claim can be based on dishonest and unfair practices used to promote the entrepreneurial aspects of a doctor's practice, such as when the doctor promotes an operation or service to increase profits and the volume of patients, then fails to adequately advise the patient of risks or alternative procedures.

Here, while there is no specific showing that Dr. Fine's decision to perform a particular operation was influenced

---

[5]The elements of lack of informed consent are defined by RCW 7.70.050:

"(1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his representatives against a health care provider:

"(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

"(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

"(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;

"(d) That the treatment in question proximately caused injury to the patient."

[6]RCW 4.24.290 provides in part:

"In any civil action for damages based on professional negligence against a hospital . . . or against a member of the healing arts . . ., the plaintiff in order to prevail shall be required to prove by a preponderance of the evidence that the defendant or defendants failed to exercise that degree of skill, care, and learning possessed . . . by other persons in the same profession, and that as a proximate result of such failure the plaintiff suffered damages, but in no event shall the provisions of this section apply to an action based on the failure to obtain the informed consent of a patient."

by any entrepreneurial motives, the allegations of the complaint are sufficient for the trial court to have concluded, without further delineation, that the evidence may be produced after discovery showing that the consent to tubal ligation related to some entrepreneurial aspect of Dr. Fine's practice. In addition, whether Dr. Fine's conduct meets the other prongs of the *Hangman* test is a question of fact to be resolved at the trial level.

We affirm and remand for further procedures at trial in accordance with this opinion.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied October 9, 1986.

Review denied by Supreme Court March 4, 1987.