[No. 9351-4-III.  Division Three.  June 6, 1989.]

HELEN STEVENS, *Appellant,* v. HYDE ATHLETIC INDUSTRIES, INC., ET AL, *Defendants,* P & E ATHLETIC SPORTS STORE, ET AL, *Respondents.*

*David Goicoechea* and *MacGillivray & Jones,* for appellant.

*Timothy Esser* and *Irwin, Myklebust, Savage, Brown & Esser,* for respondents.

MUNSON, J.—Helen Stevens appeals the trial court's summary judgment dismissal of her claim against P&E Athletic Sports Store, Inc., for violation of the Consumer Protection Act (CPA), negligence, and breach of express warranty. She contends material issues of fact exist which make summary judgment inappropriate. P&E cross–appeals, contending the court erred in denying its motion for attorney fees. We affirm the dismissal and deny attorney fees.

On March 14, 1986, Ms. Stevens visited P&E in Moscow, Idaho, to purchase softball shoes and a glove. While there, a salesman recommended the "Spot–Bilt Monsters," noting they were the best and most popular softball shoe on the market. Ms. Stevens indicated she relied on these representations and paid $15 toward the purchase, placing the shoes on layaway.

On April 11, Ms. Stevens made a second payment on the shoes and indicated she was told by the owner of P&E that the Spot–Bilt Monsters were highly recommended and were a great softball shoe. These shoes, in addition to the usual cleats on the bottom of the shoe, also have "sidewall cleats", which protrude from the outside edge of the shoe.

On June 12, while wearing the shoes in a women's softball game in Pullman, Washington, Ms. Stevens attempted to slide into home plate when the outer cleat of her right shoe caught in the dirt and severely fractured her ankle. She filed a complaint in the Whitman County Superior Court on July 24, alleging several causes of action.[1] The complaint named as defendants Hyde Athletic Industries, Inc., the manufacturer of the shoe, and P&E, the product seller.

---

[1] Ms. Stevens' complaint as to P&E alleged the following causes of action: (1) negligence, (2) strict liability, (3) breach of implied warranty, (4) breach of express warranty, (5) misrepresentation, (6) outrage, and (7) violation of the CPA.

P&E moved for summary judgment.[2] In response, Ms. Stevens filed affidavits from herself and Steven L. Hertz, head coach of the men's baseball team at Gonzaga University. Mr. Hertz' affidavit noted: (a) the unusual and distinct design of the cleats which were not only on the bottom of the shoe, but protruded outward from the perimeter of the sole and heel; (b) the Spot–Bilt Monster is substantially different from conventional softball shoes; (c) the shoes should not be sold as softball shoes; (d) a warning should be given to avoid sliding; and (e) the danger of the shoes should be recognized by a person knowledgeable about the game. The court granted P&E's motion for summary judgment and dismissed P&E on April 22, 1988. Ms. Stevens filed a motion for reconsideration on April 29, to which was attached, as "newly discovered" evidence, portions of the Hyde product catalog. On May 11, P&E filed a motion for attorney fees. The court denied both motions.

First, Ms. Stevens contends the court erred in determining no issue of material fact existed as to her claim for violation of the CPA. RCW 19.86.090 outlines the parameters of the CPA:

> Any person who is injured in his or her *business or property* . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: . . .

(Italics ours.)

Interpreting this statute, the court determined actions for personal injury do not fall within the CPA; hence, summary judgment was appropriate on this issue. Ms. Stevens asserts this determination was error in light of the repeated failure of Washington appellate courts to specifically find to the contrary. *See Zamora v. Mobil Oil Corp.,* 104 Wn.2d

---

[2]The trial court noted that although this was a Whitman County case, the motion was argued in Spokane for convenience.

199, 704 P.2d 584 (1985); *Smith v. Sturm, Ruger & Co.,* 39 Wn. App. 740, 695 P.2d 600, *review denied,* 103 Wn.2d 1041 (1985).

The key focus by the parties and the trial court on this issue was in the interpretation of *Quimby v. Fine,* 45 Wn. App. 175, 724 P.2d 403 (1986), *review denied,* 107 Wn.2d 1032 (1987). There, the court in dealing with a claim for wrongful birth drew a distinction between the "entrepreneurial aspects" of the medical profession and the actual competence of the medical practitioner, the latter not falling within the coverage of the CPA.[3] *Quimby,* at 180. Based on this distinction, the court determined personal injury claims cannot be brought under the CPA.

As both parties note, Washington courts have not decided whether personal injury claims are within the CPA. *Zamora* and *Smith,* cited by Ms. Stevens, were decided on other issues. The Legislature directs the court in such circumstances to seek guidance from federal law. RCW 19.86.920.[4] We do so here.

*Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 60 L. Ed. 2d 931, 99 S. Ct. 2326 (1979) considered the phrase "injured in his business or property" under the antitrust laws and noted:

> The phrase "business or property" also retains restrictive significance. It would, for example, exclude personal injuries suffered. *E. g., Hamman* v. *United States,* 267 F. Supp. 420, 432 (Mont. 1967). Congress must have

---

[3]The court relied upon *Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984) which made a similar distinction for the legal profession.

[4]RCW 19.86.920 provides in pertinent part:

"The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in *construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same* or *similar matters* . . . To this end this act shall be liberally construed that its beneficial purposes may be served." (Italics ours.)

intended to exclude some class of injuries by the phrase "business or property."

In *Hamman v. United States,* 267 F. Supp. 420, 432 (D. Mont. 1967), the court noted: "'The term "business or property" is used in the ordinary sense and denotes a commercial venture or enterprise'." *See also Bhan v. NME Hosps., Inc.,* 669 F. Supp. 998, 1013 (E.D. Cal. 1987). Had the Legislature intended to include actions for personal injury within the coverage of the CPA, it would have used a less restrictive phrase than "business or property". Ms. Stevens' attempts to come within this analysis by classifying her personal injury damages into a pseudo–property structure, *i.e.,* special damages such as hospital, physician, and rehabilitative expenses, constitute property and economic interests. This argument is unconvincing.

We further note the distinction in the statute of limitation for the CPA and personal injury claims, the former having a 4–year limitation period and the latter a 3–year limitation period. Likewise, our sister states have ruled on similar language and excluded personal injury claims from consumer protection coverage. *See Beerman v. Toro Mfg. Corp.,* 1 Hawaii App. 111, 615 P.2d 749 (1980); *Gross–Haentjens v. Leckenby,* 38 Or. App. 313, 589 P.2d 1209 (1979). We hold actions for personal injury do not fall within the coverage of the CPA.

The judgment is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

THOMPSON, C.J., and SHIELDS, J., concur.