165 P.3d 43 (2007)
Mystie MICHAEL, Appellant,
v.
Betsy MOSQUERA-LACY, et al., Respondents.
No. 34497-1-II.
Court of Appeals of Washington, Division 2.
August 14, 2007.
*45 Lincoln Charles Beauregard, Law Offices of John R. Connelly, Jr., Tacoma, WA, for Appellant.
Christopher W. Tompkins, Betts Patterson & Mines PS, Seattle, WA, Jody Lee Campbell, Olympia, WA, for Respondents.
PENOYAR, J.
¶ 1 Mystie Michael appeals the trial court's grant of summary judgment, dismissing her Consumer Protection Act (CPA)[1] claims against Bright Now! Dental (Bright Now) for her periodontist, Dr. Betsy Mosquera-Lacy, using cow bone for grafting after Michael specifically requested that no animal products be used. There are material issues of fact as to whether an unfair or deceptive act or practice existed, whether the complained-of actions were "entrepreneurial aspects" of the profession that occur in trade or commerce, and whether the complained-of actions impact public interests. We therefore reverse and remand for trial.

FACTS
¶ 2 Bright Now provides dental care and periodontal services to the general public. Michael visited Bright Now for dental care and a bone grafting procedure. She filled out a pre-procedure form, stating that she was allergic to the anesthetic Lidocaine. Michael's primary care physician informed Bright Now that Michael reacts to Lidocaine with seizures and instructed Bright Now to test her for alternative medications before surgery.
¶ 3 Dr. Lacy met with Michael and discussed the different products she could use for Michael's bone grafting procedure. Dr. Lacy explained that xenogaft (cow bone), allograft (human bone), or synthetic bone could be used. Dr. Lacy stated that she provided Michael with the information on different bone material because "I wanted her to know the different options that [we] have." 1 Clerk's Papers (CP) at 62. Katie Guthrie, Bright Now's customer service representative, testified that Michael specifically requested that no cow bone be used in her grafting procedure. Guthrie told Dr. Lacy that Michael did not want Dr. Lacy to use cow bone and told Dr. Lacy that she needed to discuss the matter with Michael. Dr. Lacy told Guthrie that she most commonly uses cow bone in a bone grafting procedure but that it was possible to use a different type of bone. Dr. Lacy was responsible for maintaining the materials and supplies she would need for bone grafting procedures at Bright Now.
¶ 4 A few months later, Dr. Lacy performed Michael's grafting procedure. She gave Michael seven Lidocaine capulets as an anesthetic. As Michael lay in the dentist's chair before the procedure, she asked Dr. Lacy, "Can I see the bone?" 1 CP at 28. Dr. Lacy replied, "Yes," and showed the *46 bone material to Michael. 1 CP at 28. Michael said, "And this is human bone?" 1 CP at 28. Dr. Lacy responded, "No, it's cow bone." 1 CP at 28. Michael said, "Dr. Lacy, I said I didn't want cow bone . . . I just can't fathom the thought of animal parts being in my body. . . . Do you have human bone?" 1 CP at 28. Dr. Lacy responded that she did; "I have some in the back. I'll go get it." 1 CP at 28. Michael again said, "I just don't want any cow bone in me." 1 CP at 28. Dr. Lacy indicated to Michael that she understood; she left and then returned and performed the procedure.
¶ 5 After the procedure, Michael began vomiting, lost consciousness, and was rushed out of Bright Now to the emergency room. At the hospital, she was treated for medical conditions resulting from the Lidocaine. Michael returned home from the hospital and Dr. Lacy phoned her multiple times to check on her recovery. During one of these phone calls, Dr. Lacy informed Michael that she had used cow bone during the bone grafting procedure because she did not have enough human bone material to finish Michael's procedure.
¶ 6 Michael sued Dr. Lacy and Bright Now for negligence, medical battery, and CPA violations. Dr. Lacy and Bright Now moved for partial summary judgment, arguing that Michael's CPA claims should be dismissed. The trial court granted summary judgment and Michael voluntarily dismissed her other claims against Dr. Lacy and Bright Now. Michael now appeals the trial court's order granting summary judgment.

ANALYSIS
¶ 7 On review of an order for summary judgment, we perform the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004) (citing Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo and summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). In reviewing a summary judgment motion, we view all facts in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005) (citing Atherton Condo. Apartment Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990)); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The moving party, here Bright Now, bears the burden of demonstrating that there is no genuine issue of material fact as to any of the CPA claim elements. Atherton, 115 Wash.2d at 516, 799 P.2d 250.
¶ 8 There are five elements of a CPA claim: (1) an unfair or deceptive act or practice that; (2) occurs in trade or commerce; (3) impacts the public interest; (4) causes injury to the plaintiff in her business or property; and (5) the injury is causally linked to the unfair or deceptive act. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 312, 858 P.2d 1054 (1993). Bright Now had the burden of proving to the trial court that there was no genuine issue of material fact as to any of these elements and that Bright Now was entitled to judgment as a matter of law.
I. Sufficiency of Pleadings
¶ 9 A threshold question is whether Michael sufficiently pled a CPA claim. The dissent points out that Michael's claim does not specifically allege any injury to "property" as required by the CPA. Dissent at 51; 1 CP at 46. The dissent analyzes Tallmadge to find that Michael must allege damage to property in her complaint. Dissent at 51 (citing Tallmadge v. Aurora Chrysler Plymouth, Inc., 25 Wash.App. 90, 93-94, 605 P.2d 1275 (1979)).
¶ 10 In Tallmadge, the court applied the CPA where the plaintiff had been "inconvenienced, deprived of the use and enjoyment of his property, and received an automobile with defects needing repair." Tallmadge, 25 Wash.App. at 94, 605 P.2d 1275. The dissent distinguishes Michael's claim from the plaintiff in Tallmadge based on the elements of compensable damages pled. However, it is not clear from Tallmadge what, if any, compensable damages were claimed in the plaintiff's pleadings. See Tallmadge, 25 Wash. *47 App. at 93-95, 605 P.2d 1275. The court found that "the record indicate[d] that [the plaintiff] suffered injuries for purposes of the Consumer Protection Act . . ." Tallmadge, 25 Wash.App. at 93-94, 605 P.2d 1275 (emphasis added). The court addressed the evidence in the record that supported the court's finding of damages. Tallmadge, 25 Wash.App. at 92-94, 605 P.2d 1275. It did not address the damages pled. Id. Thus Tallmadge is not helpful for the purpose of determining the sufficiency of pleadings in this case.
¶ 11 We analyze Michael's pleading sufficiency based on applicable court rules and case law. While inexpert pleadings may survive a summary judgment motion, insufficient pleadings cannot. Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986). Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought. CR 8(a). Complaints failing to give the opposing party fair notice of the claim asserted are insufficient. Dewey v. Tacoma Sch. Dist. No. 10, 95 Wash.App. 18, 26, 974 P.2d 847 (1999) (a party who fails to plead a cause of action "cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along"); Lundberg v. Coleman, 115 Wash.App. 172, 180, 60 P.3d 595 (2002).
¶ 12 Michael specifically pled a CPA claim. Under the heading "CAUSES OF ACTION", the complaint states "CONSUMER PROTECTION ACT: Defendants engaged in deceptive practices causing injury to Ms. Michael in [sic] manner prohibited under Washington law." 1 CP at 46. The term "deceptive practices" is statutory language under the CPA. RCW 19.86.020. Within her complaint, Michael pled damages for ". . . conscious pain, suffering and mental anguish, as well as physical disability and permanent injuries . . . damages for loss of enjoyment of life, emotional distress, anguish, mental and emotional shock and other special and general damages presently unknown." 1 CP at 46. She also pled damages for ". . . pecuniary losses and other general and special damages that will be proven at the time of trial." 1 CP at 46.
¶ 13 Because Washington is a notice pleading state, Michael must give fair notice of the claim asserted. CR 8(a). At trial Michael will have to prove damage to her property that resulted from Bright Now's deceptive acts or practices. See Nelson v. Nat'l Fund Raising Consultants, Inc., 120 Wash.2d 382, 393, 842 P.2d 473 (1992) (Element of CPA violation is injury to plaintiff's business or property). However, there is no requirement that she completely detail the damages that she suffered within the complaint. Michael alleged both a CPA violation and damages based on that violation. She gave Bright Now fair notice of her claim's basis. We find her complaint sufficient.
II. Injury to Business or Property
¶ 14 Michael argues that sufficient evidence exists to support a claim that she suffered an injury to business or property under the CPA. Relying on Tallmadge, she asserts that the cow bone inserted into her jaw was defective and therefore subject to the CPA because it involved a "substitution of products." Br. of Appellant at 20. She asserts that she requested human bone and instead she was given cow bone and she therefore suffered an injury to property.
¶ 15 Bright Now counters that Michael suffered no injury to property or business and the CPA does not apply to claims arising out of alleged malpractice by a health care provider. Bright Now asserts that Michael's injuries are classic personal injury claims and not subject to the CPA.
¶ 16 Personal injury claims are not subject to the CPA. Stevens v. Hyde Athletic Indus., Inc., 54 Wash.App. 366, 369, 773 P.2d 871 (1989). The CPA only covers injury to "business or property." Stevens, 54 Wash. App. at 369, 773 P.2d 871. If the Legislature had intended to include personal injury actions within the CPA, it would have used a less restrictive phrase than "business or property." Stevens, 54 Wash.App. at 369, 773 P.2d 871.
¶ 17 In Tallmadge, the case Michael relied on, we held that there was a valid CPA claim when a plaintiff bought a car at a dealership in response to their advertisement. The advertisement *48 stated that the car was a new car and the plaintiff later discovered that the car had been damaged and repainted. Tallmadge, 25 Wash.App. at 93, 605 P.2d 1275. The plaintiff sued the car dealership under the CPA and we held that the act of advertising to the public the sale of a new car, but selling a used car, was an unfair and deceptive act. Tallmadge, 25 Wash.App. at 93, 605 P.2d 1275. We explained that the plaintiff suffered injuries subject to the CPA because he was inconvenienced, deprived the use and enjoyment of his property, and received an automobile that needed to be repaired. Tallmadge, 25 Wash.App. at 93, 605 P.2d 1275.
¶ 18 However, in Stevens, Division Three held that there was no injury under the CPA when a plaintiff bought a pair of softball shoes from a salesperson after the salesperson claimed that the shoes were the best shoe on the market. During a softball game, the plaintiff was wearing the shoes and the outer cleat caught in the dirt, severely fracturing her leg. Stevens, 54 Wash.App. at 367, 773 P.2d 871. The court held that the plaintiff's injuries were merely personal injuries and not subject to the CPA. Stevens, 54 Wash.App. at 369, 773 P.2d 871.
¶ 19 We hold that Michael's injury of having cow bone used during the procedure, after she specifically requested that it not be used, like in Tallmadge is the type of injury that, if proven, is subject to the CPA. Michael provided sufficient evidence that she suffered injury to property and thus summary judgment on this issue was not proper.
¶ 20 Michael specifically requested that human bone be used during her bone grafting procedure and Dr. Lacy instead used cow bone. Similar to Tallmadge, Michael went home with a different product than was represented as being sold to her. The current location of the property, in Michael's jaw, does not change the result because she was given a product that she had rejected. If her only injury was gum swelling or complications from the bone grafting surgery, then the CPA would not apply. Here, as in Tallmadge, Michael thought she was purchasing one product but was given another. Additionally, Michael's CPA injury does not have to be great, or even quantifiable. Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash.App. 553, 563-64, 825 P.2d 714 (1992). "When a misrepresentation causes inconvenience that deprives the claimant of the use and enjoyment of his property, the injury element [of the CPA] is satisfied." Stephens v. Omni Ins. Co., 138 Wash.App. 151, 159 P.3d 10, 25 (2007). Because the scope of injury to property under the CPA "is especially broad and is not restricted to commercial or business injury[,]" Michael may recover damages under the CPA by showing that the cow bone graft has deprived her of use and enjoyment of her property. Stephens, 138 Wash.App. 151, 159 P.3d at 25. We hold that the trial court erred in granting summary judgment.
III. Unfair or Deceptive Act
¶ 21 Bright Now argues that Michael failed to provide any evidence regarding advertising or promotional activities and that the second element of a CPA claim therefore cannot be met. We disagree. Under the CPA, there must be an unfair or deceptive act or practice. It is not necessary to prove intent to deceive or defraud. Fisher v. World-Wide Trophy Outfitters, 15 Wash. App. 742, 748, 551 P.2d 1398 (1976). Here, Michael was assured by Bright Now's customer service representative that no cow bone would be used. Later, during the procedure, Michael told Dr. Lacy that she did not want cow bone used. Bright Now cites to no case stating that advertising is necessary to satisfy this element of a CPA claim. Because there is sufficient evidence to establish a material question of fact as to whether an unfair or deceptive act or practice existed, summary judgment was not proper.
IV. Trade or Commerce
¶ 22 The second element of the CPA is satisfied of the deceptive act occurred in "trade or commerce." Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d at 312, 858 P.2d 1054. Michael contends that Dr. Lacy and Bright Now solicited and retained her business by representing that human bone material was available for the bone grafting procedure. She argues that her injury relates to the "entrepreneurial *49 aspects" of their practice and the procedure and is therefore subject to the CPA. Bright Now disagrees.
¶ 23 Historically, the "learned professions," such as law or medicine, were not considered within the sphere of "trade or commerce" and not subject to the CPA. Quimby v. Fine, 45 Wash.App. 175, 180, 724 P.2d 403 (1986). In Short our Supreme Court held that the "entrepreneurial aspects" of a legal practice are within the sphere of trade or commerce and are subject to the CPA. Short v. Demopolis, 103 Wash.2d 52, 61, 691 P.2d 163 (1984); Quimby, 45 Wash. App. at 180, 724 P.2d 403. The court explained that "entrepreneurial aspects" of a practice include how the price of services is determined, billed, and collected and the manner in which a firm obtains, retains, and dismisses clients. Quimby, 45 Wash.App. at 180, 724 P.2d 403 (citing Short, 103 Wash.2d at 61, 691 P.2d 163). However, CPA claims that relate to the competence and performance of a profession do not fall within the sphere of trade or commerce and are thus not subject to the CPA. Jaramillo v. Morris, 50 Wash.App. 822, 750 P.2d 1301 (1988). "Entrepreneurial activities" do not include the processes in which a physician uses her learned skills in examining, diagnosing, treating, or caring for a patient. Wright v. Jeckle, 104 Wash.App. 478, 484-85, 16 P.3d 1268 (2001). The inquiry here is to determine if Dr. Lacy's material choice for Michael's procedure is an entrepreneurial activity.
¶ 24 In Jaramillo, a plaintiff suffered injuries when her podiatrist performed an ankle surgery that fell below acceptable medical standards. Jaramillo, 50 Wash.App. at 824, 750 P.2d 1301. The court held that the negligence claims against the doctor were not properly cognizable under the CPA because they only related to his medical negligence and not to any "entrepreneurial aspects." Jaramillo, 50 Wash.App. at 826, 750 P.2d 1301. Similarly in Quimby, a plaintiff asserted that her doctor violated the CPA when he substituted one sterilization procedure for another without her consent. Quimby, 45 Wash.App. at 176-77, 724 P.2d 403. The court held that the ineffective sterilization procedure medical negligence claim was not subject to the CPA because it only related to the doctor's negligence and not to any "entrepreneurial aspects" of the profession.[2]Quimby, 45 Wash.App. at 179, 724 P.2d 403. But in Wright, a physician's advertising, sale, and marketing of diet drugs was subject to the CPA because it implicated the "entrepreneurial aspects" of his medical practice. Wright, 104 Wash.App. at 482-83, 16 P.3d 1268.
¶ 25 A material issue of fact exists on whether the use of cow bone and Dr. Lacy's representations that cow bone would not be used were "entrepreneurial aspects" of her profession. Here Bright Now has not met it's burden of showing that, as a matter of law, Dr. Lacy's representations and use of cow bone were not "entrepreneurial activities." We therefore hold that summary judgment was not proper on this issue. It is possible that a jury could determine that Dr. Lacy's representations and use of the cow bone related to the manner in which Bright Now obtains, retains, and dismisses clients and is therefore an entrepreneurial aspect of her practice. However, there is insufficient evidence here for us to make that determination as a matter of law. The parties dispute whether Dr. Lacy's use of cow bone relates to her competence and performance as a dentist and exempt from the CPA or if it was an "entrepreneurial aspect" of her profession. We remand for a jury to make this determination.
V. Impacts Public Interest
¶ 26 Michael asserts that the trial court erred in granting summary judgment because a trier of fact determines whether the public has an interest in any given action. Bright Now disagrees, arguing that there was no issue of material fact regarding public interest.
¶ 27 The CPA's purpose is to protect the public and foster fair and honest competition. *50 RCW 19.86.920. It is, however, the legislature's intent that the CPA shall not be construed to prohibit acts or practices that do not injure the public interest. RCW 19.86.920. The CPA's purpose is to protect the public, not to provide an additional remedy for private wrongs. Lightfoot v. MacDonald, 86 Wash.2d 331, 333, 544 P.2d 88 (1976).
¶ 28 The trier of fact determines whether the public has an interest in any given action from several factors, and which factors the fact finder considers depends on whether the transaction was essentially a "consumer" transaction or a "private" transaction. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 789-90, 719 P.2d 531 (1986). If the transaction was essentially a consumer transaction, the trier of fact should consider whether (1) the alleged acts were committed in the course of defendant's business; (2) the acts were a part of a pattern or generalized course of conduct; (3) repeated acts were committed before the act involving the plaintiff; (4) there is a real and substantial potential for repetition of defendant's conduct; and (5) the act complained of involved a single transaction, or many consumers. Hangman, 105 Wash.2d at 790, 719 P.2d 531.
¶ 29 If the transaction was essentially a "private" dispute, our Supreme Court noted that it might be more difficult to establish that the public has an interest because, ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. Hangman, 105 Wash.2d at 790, 719 P.2d 531. However, if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion as the private plaintiff, a private dispute enters the realm of the public interest. Hangman, 105 Wash.2d at 790, 719 P.2d 531.
¶ 30 If a transaction is essentially a private dispute, the trier of fact should consider whether (1) the alleged acts were committed in the course of defendant's business; (2) the defendant advertised to the public in general; (3) the defendant actively solicited the particular plaintiff; and (4) the plaintiff and defendant occupy unequal bargaining positions. Hangman, 105 Wash.2d at 791, 719 P.2d 531. The likelihood that additional plaintiffs have been or will be injured in exactly the same fashion changes a factual pattern from a private dispute into one that affects the public interest. Hangman, 105 Wash.2d at 790, 719 P.2d 531 (citing McRae v. Bolstad, 101 Wash.2d 161, 676 P.2d 496 (1984)); Edmonds v. John L. Scott Real Estate, 87 Wash.App. 834, 847, 942 P.2d 1072 (1997).
¶ 31 None of the above factors is dispositive and not all factors need to exist in order for a transaction to demonstrate public interest. Hangman, 105 Wash.2d at 791, 719 P.2d 531. The factors in both the "consumer" and "private dispute" contexts merely represent the indicia of an effect on public interest from which a trier of fact could reasonably find an impact on the public interest. Hangman, 105 Wash.2d at 791, 719 P.2d 531. They need not all exist to demonstrate public interest. Id.
¶ 32 Here, Bright Now, as the moving party, needed to establish that no genuine issue of material fact existed in regard to public interest. Atherton, 115 Wash.2d at 516, 799 P.2d 250. It needed to demonstrate that the only reasonable conclusion from the evidence was that the transaction involved did not affect the public interest. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805. It failed to do so. Considering all facts in the light most favorable to the nonmoving party, we hold that summary judgment was not proper because there is an issue of material fact regarding public interest. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805.
VI. Causal Link Between Injury and Deceptive Act
¶ 33 Finally, neither party argues that the fifth element of a CPA claim is not met here. Neither asserts that there is no casual link between the injury and deceptive act.
¶ 34 Because Bright Now has not met its burden to establish that there are no genuine issues of material fact as to any of the five elements of a CPA claim, we reverse the trial court's entry of summary judgment. Wash. State Physicians Ins. Exch. & Ass'n, 122 *51 Wash.2d at 312, 858 P.2d 1054. We reverse and remand for a trial to resolve these factual issues.
I concur: BRIDGEWATER, P.J.
ARMSTRONG, J. (Dissenting).
¶ 35 Because the Consumer Protection Act applies only to business or property loss claims and the Plaintiff claims only personal injury damages, the trial court did not err in granting the defendants summary judgment. Accordingly, I dissent.
¶ 36 In her complaint, Michael alleged that she suffered "conscious pain, suffering and mental anguish, as well as physical disability and permanent injuries." CP at 154. She also claimed "damages for loss of enjoyment of life, emotional distress, anguish, mental and emotional shock and other special and general damages presently unknown." CP at 155. Michael did not claim property damage. Specifically, Michael's complaint did not allege that the cow bone was worth less than human bone, that it would deteriorate faster than human bone, that it would require repairs that human bone would not, or that it would cause her to lose the use of her jaw or the bone. Moreover, in her response to the defendants' motions for summary judgment, Michael again did not claim any property or business losses.
¶ 37 Yet the majority reasons that Michael's claim is similar to the plaintiff's claim in Tallmadge v. Aurora Chrysler Plymouth, Inc., 25 Wash.App. 90, 605 P.2d 1275 (1979). The majority finds such similarity because here, as in Tallmadge, Michael did not receive what she bargained for. See Tallmadge, 25 Wash.App. at 94, 605 P.2d 1275. The majority does not discuss the differences between the two cases, which center on the damages claimed. In Tallmadge, the plaintiff purchased a car from the defendant that the defendant had advertised as new. Tallmadge, 25 Wash.App. at 93, 605 P.2d 1275. In fact, the car had been damaged and repaired, which the defendant did not disclose to the plaintiff. Tallmadge, 25 Wash.App. at 93, 605 P.2d 1275. In upholding a Consumer Protection Act violation, the court described the purchaser's damages as being inconvenienced, deprived of the use and enjoyment of the vehicle, and receiving an automobile with defects. Tallmadge, 25 Wash.App. at 93-94, 605 P.2d 1275. Michael makes no such claims. Because the Consumer Protection Act does not cover medical malpractice claims or personal injury claims of any sort, the defendants were entitled to summary judgment. See Stevens v. Hyde Athletic Indus., Inc., 54 Wash.App. 366, 370, 773 P.2d 871 (1989) (personal injury claims are not subject to the Consumer Protection Act); Quimby v. Fine, 45 Wash.App. 175, 180, 724 P.2d 403 (1986) (professional negligence claims, such as medical malpractice, are not subject to the Consumer Protection Act).
NOTES
[1] Consumer Protection Act Chapter of 1961 Wash. Rev.Code § 19.86 (2006).
[2] The court held that her lack of informed consent was subject to the CPA. Quimby, 45 Wash. App. at 181, 724 P.2d 403.