[No. 81107-5.   En Banc.]
Argued March 24, 2009.     Decided September 24, 2009.

TERESA AMBACH ET AL., *Respondents*, v. H. GRAEME FRENCH
ET AL., *Petitioners*.

*Stephen C. Haskell* (of *Stephen Haskell Law Offices, PLLC*) and *D. Roger Reed* (of *Reed & Giesa*), for petitioners.

*Kristin M. Houser, James D. Hailey,* and *Lindsay L. Halm* (of *Schroeter Goldmark Bender*); and *Patrick K. Fannin,* for respondents.

*Stewart A. Estes, Erin H. Hammond,* and *Carol S. Janes* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*George M. Ahrend* and *Bryan P. Harnetiaux* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Mary H. Spillane* and *Daniel W. Ferm* on behalf of Washington State Medical Association, American Medical Association, and Physicians Insurance A Mutual Company, amici curiae.

¶1 MADSEN, J. — In this case we are asked to decide whether the increased cost a consumer pays for surgery instead of alternative medical treatment constitutes an injury to "business or property" as it is used in Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. Where the increased costs are incurred as a result of a personal injury, we hold that the monetary injury cannot be separated from the personal injury and a claim under the CPA cannot be maintained. We reverse the Court of Appeals.

## FACTS

¶2 On November 16, 2001, Teresa Ambach visited Dr. Graeme French at Whitman Hospital and Medical Center complaining of neck pain and left arm numbness. On February 12, 2002, French performed surgery on Ambach's left shoulder. The surgery consisted of performing an anterior and posterior capsular shift and insertion of five suture rods and anchors with fiber wire structure. Following her surgery, Ambach complained to French of excessive pain in her shoulder. She presented herself twice in March 2002 to the emergency room at Sacred Heart Medical Center with excessive pain. Also following her surgery, Ambach sought a second opinion with a different orthopedic surgeon. After x-rays and an MRI (magnetic resonance imaging) by the second orthopedic surgeon and an appointment with the University of Washington Medical Center, Ambach was diagnosed with osteomyelitis[1] from a staph infection in her left shoulder. On May 15, 2002, Ambach's shoulder was irrigated and debrided; all of the anchors placed by Dr. French during the February 2002 surgery were removed. On September 10, 2002, Ambach had an open fusion performed on her left shoulder. According to Ambach, "As a result of the surgery and subsequent fusion, the Ambachs have suffered various financial losses." Br. of Appellant at 5.

¶3 On January 28, 2004, Ambach filed a complaint against French alleging professional negligence and violation of the CPA.[2] French responded with a motion for summary judgment in which he argued that Ambach failed to implicate the "entrepreneurial aspects of [French's] practice of medicine" and that she failed to show harm to a specific "business or property" interest. Clerk's Papers (CP) at 59. The motion went before the trial judge only on the

---

[1] A bone or bone marrow infection usually caused by bacteria.

[2] Her professional negligence claims were resolved at trial by jury and are not relevant to this petition.

issue of whether Ambach's injury was to her "business or property."

¶4  The trial court granted French's motion for summary judgment on the CPA claim and held:

[I]f the claim for damages as requested by the plaintiff could be upheld in this case, there would be almost no case involving medical negligence issues, malpractice, and so forth, in which the claims could not be brought.

It seems to me that the types of economic damages which are under discussion here . . . are exactly the traditional types of damages that flow from negligence from the ordinary types of tort claims which have always been present.

CP at 288.

¶5  On appeal, the Court of Appeals reversed the grant of summary judgment and held that "allegations of economic loss due to the increased cost of surgery over the cost of more conservative treatment are sufficient to satisfy the damages requirement [of the CPA]." *Ambach v. French*, 141 Wn. App. 782, 790, 173 P.3d 941 (2007). French petitioned this court for review. We granted review and now reverse the Court of Appeals.

## ANALYSIS

¶6  RCW 19.86.090 allows anyone who has been "injured in his or her business or property by a violation" of the CPA to bring a civil action in which she may recover actual damages, trial costs, and attorney fees. The trial court may, "in its discretion," award treble damages. *Id.* To state a prima facie claim under the CPA, a plaintiff must "establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

¶7  While "[t]he injury involved need not be great," or even quantifiable, it must be an injury to " 'business or

property'." *Id.* at 792; *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990) (citing *Hangman Ridge* and noting that statutory provision of injunctive relief "bolsters the conclusion that injury without specific monetary damages will suffice"). "Business or property" is not defined in chapter 19.86 RCW. *Black's Law Dictionary* defines "business" as "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." BLACK'S LAW DICTIONARY 226 (9th ed. 2009). "[P]roperty" is defined as "[t]he right to possess, use, and enjoy a determinate thing . . . ; the right of ownership." *Id.* at 1335. The legal definition of "property" appears to have narrowed over time and does not include rights to one's person or body:

> "In its widest sense, property includes all a person's legal rights, of whatever description. A man's property is all that is *his in law*. This usage, however, is obsolete at the present day, though it is common enough in the older books. . . . In a second and narrower sense, property includes not all a person's rights, but only his proprietary as opposed to his personal rights. The former constitute his estate or property, while the latter constitute his status or personal condition. In this sense a man's land, chattels, shares, and the debts due to him are his property; but not his life or liberty."

*Id.* at 1336 (alteration in original) (quoting JOHN SALMOND, JURISPRUDENCE 423-24 (Glanville L. Williams ed., 10th ed. 1947)).

¶8 The legislature's use of the phrase "business or property" in the CPA is restrictive of other categories of injury and is " 'used in the ordinary sense [to] denote[ ] a commercial venture or enterprise'." *Stevens v. Hyde Athletic Indus., Inc.*, 54 Wn. App. 366, 370, 773 P.2d 871 (1989) (quoting *Hamman v. United States*, 267 F. Supp. 420, 432 (D. Mont. 1967)); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) (interpreting identical phrase in § 4 of the Clayton Act, 38 Stat. 731, 15 U.S.C. § 15 (1914),

to hold that " 'business or property' " necessarily excludes "some category of injury" (emphasis omitted), for example, personal injuries, but nonetheless retains its restrictive significance when construed to encompass injury to a consumer "whose money has been diminished by reason of an antitrust violation")).

¶9 Washington courts have found injury to "business or property" where the defendant's act in violation of the CPA caused the plaintiff to suffer loss of professional or business reputation, loss of goodwill, or inability to tend to a business establishment. *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 739-41, 733 P.2d 208 (1987) (damage to business reputation caused by trade name infringement "easily met" injury to business or property requirement); *Fisons*, 122 Wn.2d at 318 (physician suffered damage to reputation when he prescribed deceptively marketed medication that injured a patient); *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563-64, 825 P.2d 714 (1992) (time spent away from business to address a deceptively formed contract made with sign company was injury to business).

¶10 Personal injury damages, however, "are not compensable [damages] under the CPA" and do not constitute injury to business or property. *Fisons*, 122 Wn.2d at 317-18 (rejecting CPA damages for "pain and suffering"); *Stevens*, 54 Wn. App. at 369-70 (rejecting medical expenses); *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998) (damages "including reimbursement for lost wages and earning capacity, medical expenses and damages to [a vehicle] arise from personal injuries and are commonly awarded in personal injury actions" and are "not recoverable under the CPA"), *rev'd on other grounds*, 138 Wn.2d 248, 263-64, 978 P.2d 505 (1999) (reversing Court of Appeals' disposition of plaintiff's product liability claim and declining "to consider [CPA] assignment of error because [plaintiff] has not shown any compelling reason for the Court to go beyond the questions raised in the petition for review").

¶11 "[H]ad our Legislature intended to include actions for personal injury within the coverage of the CPA, it would have used a less restrictive phrase than injured in his or her 'business or property'." *Fisons*, 122 Wn.2d at 318 (quoting *Stevens*, 54 Wn. App. at 370). This limitation clearly excludes stand alone personal injury claims like those for pain and suffering. *Id.* at 317-18 (doctor could not recover under CPA for pain and suffering caused by deceptively marketed drug).

¶12 Ambach attempts to describe her qualifying injury as "specific and limited" to a traditional CPA claim of "the cost of a product . . . acquired due to fraud or deception." Suppl. Br. of Resp't at 3. However, at hearing on the motion for summary judgment, Ambach agreed that her CPA injury was "part and parcel of a personal injury claim" but argued that the "damages" she suffered could be seen as distinct from malpractice damages if a jury decided there was a "consumer protection violation."[3] Verbatim Report of Proceedings (July 9, 2004) at 11-12. Ambach's focus on her loss of money as a qualifying CPA injury ignores the larger reality of her claimed injury: "medical expenses, wage loss, loss of earning capacity, and out-of-pocket expenses" are, as Ambach has admitted, personal injury damages. *Ambach*, 141 Wn. App. at 789.

¶13 Where plaintiffs are both physically and economically injured by one act, courts generally refuse to find injury to "business or property" as used in the consumer protection laws. *See Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 705-06 (9th Cir.) (hospitals' claimed CPA injuries were "predicated on personal injuries to smokers" and not cognizable under the CPA), *cert.*

---

[3] Ambach conflates the idea of what constitutes proof of the injury element with the facts relevant to a plaintiff's damages. To state a valid CPA claim, a plaintiff must prove that the injury, separate from any monetary loss, is to business or property. BLACK'S LAW DICTIONARY, *supra*, at 856, 445 (defining "injury" as "[t]he violation of another's legal right" and defining "damages" as "[m]oney claimed by . . . a person as compensation for loss or injury"). *See generally Nordstrom*, 107 Wn.2d at 740 ("The fourth prong of the *Hangman Ridge* test is that Nordstrom must be injured in its business or property. This requirement is based on RCW 19.86.090, which uses the term 'injured' rather than suffering 'damages.' ").

*denied,* 534 U.S. 891 (2001); *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 964 (9th Cir. 1999) ("individuals that suffer personal injury cannot claim medical expenses as 'injury to business or property' "); *Nw. Laborers-Employers Health & Sec. Trust Fund v. Philip Morris Inc.,* 58 F. Supp. 2d 1211, 1215 (W.D. Wash. 1999) ("[e]xpenses for personal injuries are not injuries to business or property within the meaning of the statute"); *Fisons,* 122 Wn.2d 299; *Stevens,* 54 Wn. App. 366; *Hiner,* 91 Wn. App. at 730 (lost wages, medical expenses, and damage to vehicle are not injuries to business or property as contemplated by the CPA). *But see Erickson v. Upjohn Co.,* 78 F.3d 592, 1996 WL 95249, at \*3 (9th Cir. 1996) (unpublished) (allowing plaintiffs to "salvage" their previously dismissed CPA claim by narrowing their claim to recovery of money spent on " 'excessive, useless, and ultimately dangerous' " medication (citing *Mason,* 114 Wn.2d 842)).[4]

¶14 Further, as the Ninth Circuit has established, payment for medical treatment, like Ambach's payment for surgery, does not transform medical expenses into business or property harm. *Ass'n of Wash. Pub. Hosp. Dists.,* 241 F.3d at 705, 706 n.8 (analyzing the Washington State CPA, the Ninth Circuit noted, "Expenses for personal injuries are not injuries to business or property under the CPA" and, further, that this court's decision in *Fisons* does not require a different result: "[t]he physician in *Fisons Corp.* did not seek to recover [damages] for his expenses incurred in treating the patient who was harmed by the drug, but rather sought to recover for the injury to his reputation occasioned by the misprescription").

¶15 Washington courts have reached similar conclusions. In *Stevens,* for example, a woman purchased softball

---

[4] Although cited by the parties, *Erickson* is not on point because it involved claims against a pharmaceutical company, not a medical care provider. In addition, the decision is an unpublished disposition and in conflict with subsequently published Ninth Circuit decisions. *See Ass'n of Wash. Pub. Hosp. Dists.,* 241 F.3d at 706 (payment for medical treatment should not transform medical expenses into business or property harm recoverable under the CPA).

cleats later shown to be dangerous for use in softball. 54 Wn. App. at 368. After fracturing her ankle while wearing the shoes, Stevens sued the store where she purchased them for negligence, breach of express warranty, and violation of the CPA. The *Stevens* court held that plaintiff's "[classification of] her personal injury damages into a pseudo-property structure, *i.e.*, [alleging] special damages such as hospital, physician, and rehabilitative expenses, constitute property and economic interests" was an unconvincing attempt to come within the restrictive "business or property" analysis. *Id.* at 370. Ambach argues that *Stevens* is distinguishable because the plaintiff was not "alleging as CPA damages the cost of her shoes or the time it would take her to buy new ones." Suppl. Br. of Resp't at 16. Whether or not this allegation would have made Stevens' CPA claim cognizable, we agree with the Ninth Circuit that the statutory exclusion of recovery for personal injuries prevents a plaintiff from claiming *expenses* for personal injuries as a qualifying injury in and of itself. *Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 705-06.

¶16 Both Ambach and the Court of Appeals rely on *Podiatry Insurance Co. of America v. Isham*, 65 Wn. App. 266, 828 P.2d 59 (1992), as support for the proposition that allegations of economic loss due to the increased cost of surgery are sufficient to satisfy the CPA injury requirement. *Isham*, however, involved the scope of coverage in an insurance policy, not the scope of qualifying CPA injuries. In *Isham*, the Podiatry Insurance Company of America (PICA) brought an action for declaratory relief against its insured doctor. The doctor, Dr. Isham, had been sued for negligence and failure to obtain informed consent. The patient amended her complaint against Dr. Isham after the Court of Appeals' decision in *Quimby v. Fine*, 45 Wn. App. 175, 724 P.2d 403 (1986), in which Division One "held a lack of informed consent claim against a health care provider *may* be within the scope of the CPA, if it relates to the entrepreneurial aspects of the medical practice." *Isham*, 65 Wn. App. at 267 (emphasis added). PICA filed the action for declara-

tory judgment "seeking a judicial determination that any claim for violation of the CPA was outside their coverage or fell within a policy exclusion and thus [they] had no duty to defend or pay." *Id.* at 268. The *Isham* court held only that PICA had no duty to defend Isham against an action for a CPA violation because such an action amounts to an allegation that Isham violated a law and was thereby within the clearly stated exemptions to his coverage. *Id.* at 271.

¶17 The *Isham* court did not hold, as Ambach argues, that the cost of surgery versus more conservative treatment was a CPA injury. Suppl. Br. of Resp't at 12. In the facts section of the opinion, the *Isham* court merely discussed what gave rise to PICA's suit for declaratory relief:

> PICA, Dr. Isham's malpractice insurance carrier, is defending the Ishams against [patient's] claims under a reservation of rights. Following this court's decision in *Stevens v. Hyde Athletic Indus., Inc.*, 54 Wn. App. 366, 370, 773 P.2d 871 (1989), which held a personal injury does not constitute an injury to "business or property" for purposes of the CPA, the Ishams moved for dismissal of the CPA claim. The [trial] court denied the motion, finding the *Stevens* requirement that something more than "personal injury" type damages be alleged in a CPA action was met by [patient's] claim of economic loss due to the increased cost of surgery versus more conservative treatment.
>
> PICA then filed this declaratory judgment action.

*Isham*, 65 Wn. App. at 268.

¶18 This statement of facts was relevant only to the disposition of the declaratory judgment. It is a far stretch to argue that *Isham* constitutes a substantive statement of the law regarding CPA injury. However, to the extent the case can be read to comment on the injury prong of a CPA claim, it should be noted that the *Isham* court rejected arguments that Isham's acts giving rise to the negligence claim of failure to obtain informed consent could also "subject[ ] him to an allegation he violated the CPA." *Id.* at 270.

¶19 Ambach's failure to state a cognizable CPA claim is not just that she attempts to disguise her personal

injuries as sounding in business or property, but also that she fails to allege the truly public nature of Dr. French's actions. In *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 200 P.3d 695 (2009), we held no CPA claim could be had where the claim relates to the doctor's "judgment and treatment of a patient" and the claimant fails to submit evidence that the injurious procedure was "advertised or marketed." *Id.* at 604, 603. Because Michael could not show that the dentist's office "advertised to the public in general" or actively solicited the claimant's business, we held she "failed to show her lawsuit would serve the public interest." *Id.* at 605.

¶20 Though Ambach's case is before us only on the issue of whether her injury is to "business or property," the structure of her CPA claim is similar to *Michael*'s. She also fails to allege that Dr. French actively solicited her as a patient or advertised shoulder surgeries to the general public.[5] The individual *Hangman Ridge* factors should not be read in isolation so as to render absurd conclusions. While Ambach's payment for her surgery may look on its face like the purchase of a good or service envisioned by the CPA, her actual damages demonstrate that what she really

---

[5] Ambach does allege that French operated out of "huge financial motivation" and was a "golden goose" for the hospital. Br. of Appellant at 3-4. This allegation, without more, is not sufficient to raise a factual question as to whether French was acting outside the "scope of [his] business" as a medical doctor when he recommended Ambach have shoulder surgery. *Michael*, 165 Wn.2d at 605. *See generally* Mary Anne Bobinski, *Autonomy and Privacy: Protecting Patients from Their Physicians*, 55 U. PITT. L. REV. 291, 315-16 (1994) (footnotes omitted) (discussing malpractice decisions based on economic incentives:

A physician in a traditional fee-for-service practice has an economic incentive to provide a high volume of services for patients, some of which might not be "necessary." A patient who is able to show that the care provided was completely unnecessary will likely be able to recover damages for the cost of the procedure as well as compensation for pain and suffering, lost wages, and the like. Thus, a surgeon who removes a healthy appendix without medical provocation would be liable for malpractice.

Yet, it is rare for a physician to perform a completely baseless procedure. It is more often true that the provider's services lie in a gray area in which they may be justified on some medical basis. A physician who eagerly performs hysterectomies or back surgeries might have some medical basis for arguing that each of the procedures was medically necessary, and she may argue that sound medical judgment supports the care provided.).

seeks is redress for her personal injuries, not injury to her business or property.[6] We hold that because Ambach's purported CPA injury is payment for a surgery from which personal injury also arose, she has failed to state a prima facie CPA claim.[7]

¶21 The Court of Appeals is reversed.

ALEXANDER, C.J.; C. JOHNSON, SANDERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ.; and HUNT, J. PRO TEM., concur.

¶22 CHAMBERS, J. (concurring) — I mostly concur with the majority. It has already been established that the Consumer Protection Act (CPA), chapter 19.86 RCW, does not provide a remedy for personal injury or medical negligence. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993); *Quimby v. Fine*, 45 Wn. App. 175, 180, 724 P.2d 403 (1986) (citing *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984)). But the CPA does reach *"every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce," including lawyers and doctors. *Short*, 103 Wn.2d at 61. Doctors are clearly answerable for false or deceptive acts in the entrepreneurial aspects of their practice. *Wright v. Jeckle*, 104 Wn. App. 478, 484-85, 16 P.3d 1268 (2001) (finding that the doctor was liable under the CPA for selling fen-phen (citing *Eriks v. Denver*, 118 Wn.2d 451, 465, 824 P.2d 1207 (1992))).

---

[6] Essentially, Ambach attempts to use her payment for the surgery as the key to the door of compensation for a panoply of common personal injury damages. However, the CPA was not designed to give personal injury claimants such backdoor access to compensation they were denied in their personal injury suits. *Stevens*, 54 Wn. App. at 369-70.

[7] Prior to oral argument, we granted Ambach's motion to strike portions of French's supplemental brief. At that time Ambach requested a discretionary sanction, in the form of "reasonable attorneys' fees and costs," under RAP 18.9(a). Resp't's Mot. to Strike at 17. Ambach had sufficient redress in our grant of her motion to strike. Her request for sanctions is denied.

After we granted Ambach's motion to strike, French filed a "Motion to Modify Order Striking Portions of Petitioners' Supplemental Brief." This motion is denied.

¶23 Whether a particular act is entrepreneurial or not is a question of fact. *Eriks*, 118 Wn.2d at 465 (citing *Quimby*, 45 Wn. App. at 182). Perhaps because of this, Dr. French conceded for the purpose of summary judgment that prescribing the operation was entrepreneurial. Given that Dr. French had been investigated for improperly prescribing surgery 19 times, it might not have been a merely strategic concession. However, that is not properly before us.

¶24 I write separately to stress that there is nothing in our jurisprudence that should prevent a patient from bringing a CPA claim against a doctor who falsely and deceptively prescribed unnecessary or unnecessarily expensive surgeries as part of a business strategy. *Cf. Wright*, 104 Wn. App. at 479-80 (upholding CPA claim based on the "advertising, marketing, and sale of diet drugs"). *Wright* remains good law after today. Nor must a plaintiff necessarily allege that the doctor advertised a procedure or solicited patients. That issue is not presented, and it would be premature to reach it.

¶25 I respectfully concur.

Reconsideration denied January 7, 2010.